UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Eric C. Grimm, | |
| Plaintiff, | |
| vs. | Civil Action No. 17-cv-654 |
| Raw Story Media, Inc., The Washington Times, LLC, The Herald Publishing Company, LLC, MLive Media Group, f/k/a Booth Newspapers, Inc., Newslo, The Associated Press, Stephen Kloosterman, Kevin Even, Paul Shibley, Brianna Scott, David Bossenbroek, Matt J. Roberts, David Shafer, Barton Dieters, and Gregory C. Pittman, | Hon. Gordon J. Quist United States District Judge  Hon. Philip J. Green United States Magistrate Judge |
| Defendants. | |

Eric C. Grimm (P58990)
ERIC C. GRIMM, PLLC
1017 West South Street
Alvin, TX  77511
Main: (734) 717-4900
Fax: (888) 502-1291
Email:  ecgrimm@umich.edu
Attorney for Plaintiff.

### MOTION FOR COURT TO AMEND WITHDRAW ORDER

Plaintiff respectfully moves for an amendment to, or withdrawal of, the Court's prior Order (Doc. Ent. 5), because the Order is based on incomplete information (assumptions that may not be entirely accurate), and the Order purports to apply a different standard for pleadings than the standards set forth in Rules 15(a)(1)(A) and 15(C)(1) of the FEDERAL RULES OF CIVIL PROCEDURE, as well as 28 U.S.C. § 1331.  Plaintiff merely seeks to enjoy the same uniform procedural rights and

flexibility, that any other litigant in federal district court enjoys.

No Defendant has yet entered an appearance. Douglas Hughes has advised that, at least on an interim basis, he is representing one of the Defendants. An attorney named Alan Kabet has identified himself as outside legal counsel for Raw Story Media.

No other defendants have advised whether they are presently represented by legal counsel. A copy of this Motion will be mailed along with Rule 4(d) waiver of service papers to all of the Defendants, except those who already have been sent Rule 4(d) waiver requests through the U.S. mail. As for Defendants that already have been requested to waive service, this motion without the Rule 4(d) papers, will be sent by first class mail to all such Defendants.

For reasons explained in more detail in the attached Supporting Brief, Plaintiff respectfully prays that the Court – so as not unfairly to prejudice the Plaintiff's original planned course of action, and to ensure that the Plaintiff enjoys the exact same rights to frame pleadings (no more rights, but also no fewer) as any other civil litigant in federal court, Plaintiff respectfully prays that the Court simply allow the issue of federal jurisdiction to be addressed consistent with the Plaintiff's original intended course of action, rather than prematurely and pre-emptively redirecting the Plaintiff down an expensive and likely un-necessary rabbit trail.

Also, Plaintiff is considering whether to file a motion requesting the self-disqualification of Magistrate Judge Green. Plaintiff has not decided whether to do so formally, but reserves the right to do so. This filing offers an opportunity to identify some reasonable concerns, to clear the air about them in an transparent way, and to ascertain whether the Court wants to do anything about them, and if so what ought to be done. This is not to impugn the personal integrity of Magistrate Judge Green, in any way. But this honorable Court has many well-qualified Magistrate Judges, who

may be a better fit for a case involving this particular Plaintiff (who Phil Green has known personally at least since 1998 – nearly two decades), and a case involving severe and intentional reputational injury to Plaintiff in his professional capacity, that was done intentionally.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: August 3, 2017 | ____/s/ Eric C. Grimm_____<br>Eric C. Grimm (P58990)<br>ERIC C. GRIMM, PLLC<br>1017 West South Street<br>Alvin, TX  77511<br>Main: (734) 717-4900<br>Fax: (888) 502-1291<br>Email:  ecgrimm@umich.edu<br>Attorney for Plaintiff. |

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Eric C. Grimm, | |
| Plaintiff, | |
| vs. | Civil Action No. 17-cv-654 |
| Raw Story Media, Inc., The Washington Times, LLC, The Herald Publishing Company, LLC, MLive Media Group, f/k/a Booth Newspapers, Inc., Newslo, The Associated Press, Stephen Kloosterman, Kevin Even, Paul Shibley, Brianna Scott, David Bossenbroek, Matt J. Roberts, David Shafer, Barton Dieters, and Gregory C. Pittman, | Hon. Gordon J. Quist
United States District Judge

Hon. Philip J. Green
United States Magistrate Judge |
| Defendants. | |

Eric C. Grimm (P58990)
ERIC C. GRIMM, PLLC
1017 West South Street
Alvin, TX  77511
Main: (734) 717-4900
Fax: (888) 502-1291
Email:  ecgrimm@umich.edu
Attorney for Plaintiff.

**BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR COURT TO AMEND WITHDRAW ORDER**

Some information perhaps not initially self-evident to the Court, may be helpful.  It is not necessarily fully accurate to describe Plaintiff as "an attorney proceeding pro se."

Not less than a week <u>prior</u> to the filing of the Original Complaint, Plaintiff signed a legal services agreement with a Michigan "Superlawyer," sent to Plaintiff by that attorney's office.  At the time, the attorney and the attorney's firm assured the Plaintiff that the attorney was taking the

case on a contingency-fee basis. However, despite multiple reminders by Plaintiff that the deadline for lodging defamation claims with the Court was rapidly approaching, the attorney who had agreed to prepare and file the complaint, was not ready to proceed with the filing on the day that Plaintiff went ahead and filed it in a superabundance of caution. On the date of filing, technically speaking, the Plaintiff was <u>not</u> unrepresented by other counsel, and did not intend to be unrepresented. Rather, he technically, <u>was</u> represented, but still had to step in himself under difficult circumstances to make sure a job got done that another lawyer was not then ready to complete.

At present, it is not necessarily clear that continuing with that existing legal services relationship, is in the Plaintiff's best interest. Plaintiff is maintaining an open mind on this subject.

Upon learning about the unforeseen situation, Plaintiff undertook to prepare a filing on short notice (Plaintiff acknowledges his inadvertent mistake of assuming that midnight was determined by his local clock in Texas, which is located in the Central Time Zone, rather than factoring in the time zone difference with Michigan – but notes that certainly no Defendant was prejudiced in any way – even arguably – by a less-than-one-hour difference in the time of initial filing).

Is it Plaintiff's intention to proceed, representing himself? Not necessarily. But inasmuch as one of the Defendants is David Shafer (a source of client referrals for Drew, Cooper & Anding), for instance, Steve Drew has not had his usual level of enthusiasm for justice, in part due to the identity of the Defendants. Pinsky, Smith, Fayette & Kennedy, has been willing to represent the Plaintiff, but only on an hourly fee basis that Plaintiff cannot presently afford, after one of the Defendants (Hon. Gregory Pittman) – according to Michigan Department of Civil Rights filings made by the Williams | Hughes law firm, and other information that has come to Plaintiff's attention – on January 28, 2015, called Plaintiff's former employer, and demanded the Plaintiff's abrupt

termination (which the firm did, as directed by the decision-maker, Pittman), apparently to punish the Plaintiff for hiring Varnum Riddering and Warner Norcross, to make a record to challenge a shady real estate transaction, and to starve Plaintiff arbitrarily of the funds needed to make a proper appellate record.  So, the situation is perhaps not as simple as the Court's apparent assumptions would make it appear.  Plaintiff <u>has</u> been reaching out to some very good lawyers, who fully understand the strong merit of the case, but who also (due to West Michigan politics, and other factors not related to the merit of the case) have exhibited some reluctance to jump in with both feet.

Accordingly, Plaintiff will continue to make entirely reasonable efforts to secure counsel other than himself.  We do not wish to perceive any condescension in the Court's characterization of the Plaintiff's role as legal counsel.  And we shall not, so long as the Court is willing to acknowledge that the underlying situation is somewhat more complicated behind-the-scenes, than may initially appear merely on the face of the pleadings.

Turning to the literal language of what the Court has ordered, the Plaintiff is all too aware of existing law that requires court orders to be obeyed based on what they literally say.  <u>E.g.</u>, <u>United States v. Hendrikson</u>, No. 15-1446, 2016 WL 930134, 16a0103p.06, slip op., page 5 (6th Cir. Mar. 11, 2016).  Here, even **prior** to the filing of the Original Complaint, Plaintiff had in mind an amendment (allowed as a matter of course under Rule 15), to be completed on or before August 9, 2017. That intended approach, renders complete diversity un-necessary, and superfluous, by adding Federal Question counts, that relate back to the initial time of filing.

What the Court has done – presumably without realizing what the Plaintiff had in mind – is to order Plaintiff to pursue a completely different course of action (and to rob Plaintiff of the flexibility that parties to federal court civil cases always have), with a deadline only two days

different than what Plaintiff originally had in mind.

Plaintiff would respectfully ask not to be placed unnecessarily in jeopardy of being held in contempt, and also that Plaintiff should not needlessly be threatened with outright premature dismissal (and resulting prejudice), if Plaintiff sticks to plaintiff's (entirely lawful, and consistent with the Federal Rules) original plan of amending anyway, and fleshing out Federal Question counts, on or before August 9.  Plaintiff <u>wants</u> to amend, so as to address all the concerns the Court has identified, Plaintiff <u>has intended</u> to do so prior to when the Court even expressed its initial concerns, and Plaintiff merely wants to do it a slightly different (but still entirely lawful) way than what the Court has, perhaps prematurely, ordered.

Plaintiff does his best as a professional to keep aware of legal developments but did not know that the Supreme Court had handed down the 2016 decision of <u>Americold Realty Trust v. ConAgra Foods, Inc.</u>, 577 U.S. ___ (2016) (which, technically and strictly speaking, involved a REIT and not an LLC), referenced by the Court.  The issue of whether LLCs ought to be treated like corporations for purposes of diversity jurisdiction, or ought to follow the citizenship-of-members rule, is far from a subject of uniform agreement in the federal appellate courts.  This is especially so when "Of course, the information critical to the LLCs' position—the citizenship of each LLC member—was uniquely and solely within the LLCs' control."  <u>See</u> <u>Lincoln Benefit Life Company v. AEI Life, LLC</u>, 800 F.3d 99 (3rd Cir. 2015).

The **same day** that the Court handed down its Order, Plaintiff reached out to James S. Brady, of the Dykema firm in Grand Rapids, and asked for Brady to supply information about the membership of The Herald Publishing Company, LLC.  It is not clear whether Brady is counsel for this entity, in relation to the lawsuit, but Brady did place a call on behalf of this entity (MLive), a

little less than a year ago, refusing to retract the false and defamatory story published by MLive.

Brady has not responded to the prompt and reasonable request by Plaintiff for the corporate information that is much more easily and readily available to The Herald Publishing Company, LLC, than it is to the Plaintiff.  Indeed, imposing an arbitrary 20-day window for Plaintiff to hunt down a possible Russian-nesting-doll of members-within-members, and to allege those, <u>when the LLC is a New York LLC</u>, and the LLC is intentionally and deliberately un-cooperative in making reasonable requested disclosures, is an entirely unreasonable deadline.

In Michigan, LLC formation documents and amendments (pertaining to Michigan LLCs only), are easy to search and review online.  Not so in New York.

New York makes it an expensive and time-consuming hassle, for a Plaintiff to request LLC membership information.  Requests for paper copies (either certified or uncertified) must be submitted to the New York state government, and then the Plaintiff must wait for a response, to determine whether all of the members are disclosed.

If the Court insists that Plaintiff run this issue to ground, Plaintiff is willing to do so, and does not refuse.  But it is simply not possible to complete the whole process in 20 days, by mail or facsimile, dealing with a New York LLC, and New York's methods of maintaining and disclosing corporate records.

Precisely because of the prejudicial information asymmetry problem that also is present in this case (namely, the Herald has easier access than the Plaintiff, to the required information, but for purposes of mere gamesmanship, the Herald will not address the information asymmetry), the Third Circuit U.S. Court of Appeals, recently, specifically urged the U.S. Supreme Court to adopt the view that LLCs ought to be treated like corporations for purposes of diversity jurisdiction.  <u>See</u> <u>Lincoln</u>

Benefit Life Company v. AEI Life, LLC, 800 F.3d 99 (3rd Cir. 2015).  We acknowledge that, unless and until a published decision by the Sixth Circuit or the Supreme Court is issued, adopting the rule strongly urged by the Third Circuit, for entirely sensible reasons, then it is fair to infer that the older (much criticized) citizenship-of-members rule, should be assumed to apply, if federal jurisdiction depends solely on diversity.  But the analysis of the Third circuit (and other commentators – see, e.g., Leslie Coletti, Thomas E. Rutledge. *Diversity Jurisdiction and Unincorporated Entities: Recent Developments*, AMERICAN BAR ASSOCIATION BUSINESS LAW TODAY (Sept. 9, 2016), < https://www.americanbar.org/publications/blt/2016/09/09_coletti.html >, very much suggests that the issue is quite live and hotly debated, that the existing law is intensely controversial, not settled the way this honorable Court would like to suggest, and that solving the problem through relation-back of a Federal Question, is a far better and more sensible solution, than insisting that the Plaintiff needlessly chase down a rabbit-trail of potentially nested LLCs.

Accordingly, rather than rushing to do what the Court has done, without understanding all the facts, and without understanding the Plaintiff's existing planned course of action, we respectfully suggest that the Court simply direct that the Plaintiff amend on or before August 9, 2017, to add one or more Federal Question counts, thus resolving any doubt about federal jurisdiction, without the need for an elaborate and expensive in the noetic perjinkities of tracing the membership off an unknown number of New York LLCs (whose membership is exceedingly and unreasonably difficult and expensive to obtain), just in case one of them might potentially have some alleged connection to Texas.  Plaintiff's solution is so much more logical, and cleaner, that this really does seem obvious.

Finally, Plaintiff wishes briefly to suggest that Magistrate Judge Green consider voluntarily

stepping aside, so as to avoid any potentially awkward appearances (Plaintiff is loathe to use the words "appearance of impropriety, out of personal respect for Magistrate Judge Green, but that is the standard).  As the Court probably knows, the U.S. Attorney's Office in Gand Rapids, for many years had what has euphemistacally been termed "morale problems," that at least in part involved the deliberate propagation of falsehoods by a married couple (Lloyd and Joan Meyer) who no longer work for the Department of Justice.  Plaintiff is not going to repeat, here, the portions relating to Grand Rapids, of the 2008 report of the Inspector General, titled U.S. DEPARTMENT OF JUSTICE, AN INVESTIGATION INTO THE REMOVAL OF NINE U.S. ATTORNEYS IN 2006.

The important point, as Magistrate Judge Green ought to confirm, is that **the problems did not start in 2006.**  They went back at least a decade prior.  The Plaintiff sought to blow the whistle about some of these irregularities to Senator Carl Levin's office in 2000.  Had someone with the stature of Phil Green, also blown the whistle on the problem, the root cause of the Margaret Chiara and Leslie Hagen firings, could have been averted years before those controversies arose.  Instead, many people other than Green, but also including Green, also stood by silently, when Lloyd Meyer went office-to-office throughout the entire Grand Rapids U.S. Attorney's Office and (perhaps the Court can understand why this would be a concern to the Plaintiff, when <u>this</u> case involves yet another West Michigan character assassination and defamation attack by attorneys on attorneys) systematically propagated untrue rumors and falsehoods about the Plaintiff (Eric Grimm) when Grimm left the U.S. Attorney's Office, but was not accused of any misconduct whatsoever (and the office certainly did not even seek to challenge Grimm's unemployment claim on any grounds remotely resembling misconduct).

The right thing to do – the stand-up thing to do – years in advance of the Chiara episode,

would have been for Phil Green and others to report through the normal and ordinary channels, that the conduct of Lloyd Meyer and Joan Meyer in 1999 and 2000 (also including misuse of office resources that was supposed to be dedicated to Affirmative Civil Enforcement projects, and other irregularities), was inconsistent with normal ethical standards for any attorney, and also inconsistent with Department rules and policies. Plaintiff is not, today, interested in what the stand-up thing conspicuously did not occur in the 1999-2000 time period.

 But it is entirely fair and reasonable to ask the question– how confident can the Plaintiff feel about the even-handed commitment of the Grand Rapids federal court, to hold accountable attorneys and journalists who intentionally go after the professional reputation of an attorney, in pursuit of improper objectives, if the Magistrate Judge on the case has previously stood by silently, and just allowed the same thing to occur previously, to the same person, without having the courage to do something about it?

 Plaintiff reserves the right to file a formal Disqualification motion (and is still debating whether to do so, because Plaintiff is also painfully aware of the unfair blowback and retaliation that can occur in this part of Michigan, if one has the temerity to criticize any aspect of any judge's present or prior conduct). However, Plaintiff respectfully suggests, under the circumstances, that it is best and most prudent, to assign one of the other well-qualified Magistrate Judges in this district, so as to make clear that (whether or not possible perceptions are accurate and justified0 the U.S. District Court for the Western District of Michigan takes seriously the need for both actual and apparent impartiality and even-handedness.

 Thank you for your attention to these matters.

**CONCLUSION**

For the reasons set forth above, Plaintiff respectfully prays that the Court enter a substitute Order, simply directing Plaintiff to amend the Complaint, as a matter of course, on or before August 9, 2017, while giving the Plaintiff the leeway to choose how to address any possible or hypothetical concerns about federal subject-matter jurisdiction.  Plaintiff respectfully prays that the Court reflect carefully on whether Magistrate Judge Green ought to self-disqualify in an abundance of caution, and so as to avoid any arguable appearances that the Court might prefer not to maintain.

This is, again, not out of dislike or disrespect for Magistrate Judge Green.  But some things in the past might have been handled better, in retrospect.  And, inasmuch as the Court has many Magistrate Judges who are comparably well-qualified with Magistrate Judge Green, perhaps it is prudent and in everyone's best interests, to staff the case with any one of them, instead.

Dated: August 2, 2017

Respectfully submitted,
   /s/ Eric C. Grimm
Eric C. Grimm (P58990)
ERIC C. GRIMM, PLLC
1017 West South Street
Alvin, TX  77511
Main: (734) 717-4900
Fax: (888) 502-1291
Email:  ecgrimm@umich.edu
Attorney for Plaintiff.