**UNITED STATES DISTRICT COURT**
**IN THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ERIC C. GRIMM,

      Plaintiff,

v.

RAW STORY MEDIA, INC., THE HERALD
PUBLISHING COMPANY, LLC, MLIVE MEDIA
GROUP, F/K/A BOOTH NEWSPAPERS, INC.,
NEWSLO, STEPHEN KLOOSTERMAN, KEVIN
EVEN, PAUL SHIBLEY, BRIANNA SCOTT,
DAVID BOSSENBROEK, MATT J. ROBERTS,
DAVID SHAFER, BARTON DIETERS, GREGORY
C. PITTMAN, WILLIAMS/HUGHES, PLLC,
DOUGLAS HUGHES, THEODORE N. WILLIAMS,
JR., TIMOTHY HICKS, WILLIAM MARIETTI,
KATHY HOOGSTRA, ROBERT CARTER,
RAYMOND KOSTRZEWA, LINNEA
KOSTRZEWA, MARK T. BOONSTRA, NEIL
MULLALLY, VICKI BROGE, AND THE COUNTY
OF MUSKEGON,

      Defendants.

Case No. 17-cv-654

Hon. Gordon J. Quist

**BRIEF IN SUPPORT OF
DEFENDANTS STEPHEN
KLOOSTERMAN, MLIVE MEDIA
GROUP, AND THE HERALD
PUBLISHING COMPANY, LLC
D/B/A THE MUSKEGON
CHRONICLE'S MOTION TO
DISMISS THE FIRST AMENDED
COMPLAINT UNDER FED. R. CIV.
P. 12(b)(6)**

**ORAL ARGUMENT REQUESTED**

---

Eric C. Grimm
Eric C. Grimm, PLLC
Attorney for Plaintiff
1017 West South Street
Alvin, TX 77511
Telephone (734) 717-4900

Allan C. Vander Laan (P33893)
Curt A. Benson (P38891)
CUMMINGS, MCCLOREY, DAVIS &
ACHO
Attorneys for Defendants Gregory C. Pittman,
Timothy Hicks, William Marietti, Kathy
Hoogstra, Raymond Kostrzewa, Neil Mullally,
County of Muskegon
2851 Charlevoix Dr., S.E., Suite 327
Grand Rapids MI 49546

James S. Brady (P11110)
Mark J. Magyar (P75090)
DYKEMA GOSSETT PLLC
Attorneys for Defendants The Herald
Publishing Company, LLC, MLive Media
Group, and Stephen Kloosterman
300 Ottawa Avenue, N.W., Suite 700
Grand Rapids, MI  49503
Telephone:  (616) 776-7532
jbrady@dykema.com
mmagyar@dykema.com

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•300 OTTAWA AVENUE N.W., SUITE 700•GRAND RAPIDS, MICHIGAN 49503

# TABLE OF CONTENTS

**Page**

STATEMENT OF FACTS ................................................................................1

I.     Plaintiff's July 10, 2016, Email, And Judge Pittman's Response ...........................1

II.    News Coverage Of The Remarks ...........................................................1

III.   The Peer Rating Panel, And MLive's Reporting ......................................3

IV.   Plaintiff's Lawsuit..............................................................................4

STANDARD OF REVIEW .............................................................................6

ARGUMENT ..................................................................................................8

I.     Plaintiff's Defamation Claims Regarding MLive's July 19, 2016, Internet News Article Are Time-Barred............................................................8

II.    Plaintiff's Defamation Claims Against The MLive Defendants Fail ....................9

       A.    The MLive Defendants' News Stories Were 100% Accurate And Privileged ..........................................................................10

       B.    Hyperbolic Opinions Are Protected And Non-Defamatory.....................13

       C.    There Was No Malice By The MLive Defendants ...................................15

III.   The MLive Defendants Are Entitled to Judgment On The "False Light" Claims.18

IV.   Plaintiff Failed To State An IIED Claim ...............................................21

V.    Plaintiff Failed To Adequately Plead Damages For Any Claim...........................23

CONCLUSION...............................................................................................24

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•300 OTTAWA AVENUE N.W., SUITE 700•GRAND RAPIDS, MICHIGAN  49503

ii

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·300 OTTAWA AVENUE N.W. SUITE 700·GRAND RAPIDS, MICHIGAN 49503

## STATEMENT OF FACTS

**I.**    **Plaintiff's July 10, 2016, Email, And Judge Pittman's Response.**

On July 10, 2016, Plaintiff Eric Grimm ("Plaintiff"), who was one of five candidates for probate court judge in Muskegon County, Michigan at the time, sent an email to several recipients.  (RE 7, First Amended Complaint, cited as "FAC," ¶¶ 364, 365; *see also* Ex. 3, *infra*.)  One of the recipients of Plaintiff's email was Defendant Stephen Kloosterman ("Kloosterman"), who was then employed as a reporter by Defendant MLive Media Group ("MLive"), an unincorporated division of The Herald Publishing Company, LLC, d/b/a Muskegon Chronicle (the "Herald") (Kloosterman, MLive, and the Herald, together, the "MLive Defendants" or simply "MLive").  (*Id.* ¶¶ 7, 364.)

In his email, Plaintiff wrote about presiding Family Division Judge Gregory C. Pittman, who is African American, as follows:

> "I can understand why some of the other candidates may not want to speak up about the 800-lb Silverback Alpha Male in the middle of the Probate Court," Grimm wrote. "They are each considerably less free to walk away and refuse to have anything to do with this court if the bullying problem is not fixed."

(Ex. 3, *infra*; FAC ¶¶ 364-367.)  Judge Pittman released a written response to Plaintiff's remarks:

> "The dignity and ethical considerations incumbent upon me as Presiding Judge of the Family Division of the 14th Circuit Court dictate that I must decline to respond to the trite and bigoted remarks and imagery evinced by the recent statements of Eric Grimm.  It is left to each of us in this community to draw our own conclusions about Eric Grimm, his mind-set and its place in our community."

(FAC ¶ 369; *see also* Ex. 3, *infra*.)  Plaintiff does not dispute that the foregoing indeed sets forth content from his July 10, 2016, email and Judge Pittman's written response.  (FAC ¶¶ 365, 369.)

**II.**    **News Coverage Of The Remarks.**

In addition to the above undisputed statements of Plaintiff's email and Judge Pittman's response, Defendant Newslo reported on July 20, 2016, that Plaintiff also said: "African Gorillas

Control The White House Yet Still Whine About Racism."  (FAC, ¶ 177; **Exhibit 1** (Newslo Article).)[1]  Plaintiff denies having made this statement.  (FAC ¶¶ 179, 180.)  No story by any MLive Defendant repeated, republished or otherwise included or referenced this statement from the Newslo article.  (*See infra*, Exs. 3, 4, 5.)

Defendant Raw Story Media, Inc. ("Raw Story") reported on July 20, 2016, that Plaintiff "whine[d]" about the backlash from his remarks, as did the Newslo article.  (Ex. 1; **Exhibit 2**, Raw Story article.)  No story by any MLive Defendant repeated, republished or otherwise included or referenced this statement from the Newslo and Raw Story articles that Plaintiff allegedly "whined," as none of the MLive stories at issue even used that word.

MLive published three (3) internet news stories regarding Plaintiff, the remarks involving Judge Pittman, and the judicial election.  (*See infra*, Exs. 3, 4, 5.)  MLive's articles are dated July 19, 2016, July 21, 2016, and August 3, 2016.[2]  (MLive Articles, **Exhibits 3, 4, 5**, respectively.)  Only MLive's July 19, 2016, article related to Plaintiff's July 10, 2016, email and Judge Pittman's response.  (Ex. 3.)  The subsequent two articles from July 21, 2016, and August 3, 2016, related only to the judicial election.  (Exs. 4, 5.)  In the July 19, 2016, article, MLive

---

[1]  The Court may consider all exhibits attached to this brief on this motion to dismiss without converting it to a motion for summary judgment.  Plaintiff specifically incorporated by reference into his First Amended Complaint ("FAC") the five internet news articles attached hereto that form the bases for his defamation and false light claims.  (RE 7, FAC ¶¶ 177, 283, 364-367, 388-390.)  The internet news articles are matters of public record, and all of the documents attached are referenced in the FAC and central to Plaintiff's claims against MLive.  *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999); *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

[2]  It is unclear from the FAC whether Plaintiff complains about MLive's August 3, 2016, article.  The FAC references the July 19, 2016, and July 21, 2016, articles at pages 52, 55, 66, and 73 of the FAC.  The August 3, 2016, article is not specifically referenced, but Plaintiff did not attach the articles as exhibits, but instead generally "incorporated by reference" the MLive Defendants' "Internet publications."  (FAC, ¶ 283.)  Out of an abundance of caution, MLive addresses its August 3, 2016, article in this brief because it mentioned Plaintiff in covering the Muskegon judicial election.  As demonstrated in this brief, nothing about MLive's August 3, 2016, article (or any other article) is actionable because it was totally accurate in reporting on the election.

2

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•300 OTTAWA AVENUE N.W., SUITE 700•GRAND RAPIDS, MICHIGAN  49503

provided verbatim quotes of statements by Plaintiff in his July 10, 2016, email and Judge Pittman's written response, as well as quotes by Plaintiff regarding the statements.  (Ex. 3.)

### III.    The Peer Rating Panel, And MLive's Reporting.

For the subject election for Muskegon County Family Division judge and District Court judge, six local Muskegon attorneys formed a peer panel and rated the nine candidates seeking election to office to judge positions.  (Exs. 3, 4; FAC ¶¶ 243-246, 250, 256, 267, 268.)  Six attorneys – Defendants David P. Shafer, David L. Bossenbroek, Paul E. Shibley, Brianna T. Scott, Matthew J. Roberts and Kevin B. Even – made up the panel.  (*Id*.)  They unanimously approved a series of ratings and gave Plaintiff the worst possible rating – one star out of five.  (*Id*.)

MLive's July 19, 2016, and July 21, 2016, articles reported about the six-attorney panel of Muskegon lawyers and its rating Plaintiff as one star out of five stars, among the ratings of the other candidates.  (Exs. 3, 4; FAC ¶ 268.)  Plaintiff does not dispute that the panel existed and rated him as one star.  (FAC ¶¶ 243-246, 250, 256, 267, 268.)  But Plaintiff believes that the ratings were "bogus," and that "[s]o-called 'peer review' in Muskegon has been a joke in Muskegon for years."  (Ex. 3.)  MLive reported Plaintiff's opinion about the panel in both its July 19, 2016, and July 21, 2016, articles.  (Exs. 3, 4.)  Plaintiff also believes that the peer rating panel was a "charade" designed to "rig" the judicial election, and that the panel consisted of attorneys who do not qualify as Plaintiff's "peers."  (FAC ¶¶ 244-247, 254, 265, 268, 289.)

MLive's July 21, 2016, article made no mention of Plaintiff's July 10, 2016, email or Judge Pittman's response, nor did it refer generally to the incident in any manner.  (Ex. 4.)  On August 3, 2016, MLive posted an internet news story regarding the status of the judicial elections for probate and district court judges.  (Ex. 5.)  The August 3, 2016, story made no mention of

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•300 OTTAWA AVENUE N.W., SUITE 700•GRAND RAPIDS, MICHIGAN 49503

3

Plaintiff's July 10, 2016, email or Judge Pittman's response, nor did it refer generally to the incident in any manner.  (*Id.*)  Nor did the August 3, 2016, story make any mention of the panel ratings, as the August 3 article was solely an update as to the status of the elections, including those candidates who had advanced and those who had been eliminated from contention.  (Ex. 5.)  In sum, as relevant to Plaintiff's allegations, the three MLive stories reported on the following topics:

- July 19, 2016, MLive Article: reported on Plaintiff's July 10, 2016, email; Judge Pittman's response; the peer rating panel; and the judicial election. (Ex. 3.)

- July 21, 2016, MLive Article: reported on the peer rating panel; and the judicial election.  (Ex. 4.)

- August 3, 2016, MLive Article: reported on the status of the judicial election. (Ex. 5.)

## IV.   Plaintiff's Lawsuit.

Plaintiff filed the instant lawsuit on July 20, 2017.  (RE 1.)  He amended his complaint on August 7, 2017, when he filed the FAC.  (RE 7.)  Plaintiff's first three alleged causes of action in the FAC all arise under federal law, and none of them are against the MLive Defendants or any other media defendant.  (FAC, Counts 1, 2, 3.)  Counts 1, 2, and 3 are against only the judge and attorney individual defendants and Muskegon County, and those claims allege state action by these actors in alleged violation of Plaintiff's First and Fourth Amendment rights and the Equal Protection Clause.  (*Id.*)  Counts 4 through 10 assert state-law claims.[3]  (FAC, Counts 4 through

---

[3]  Plaintiff tried to establish subject matter jurisdiction by dropping one of the LLCs as a defendant and adding federal claims in Counts 1, 2, and 3 of the FAC.  (*See* RE 5, 6, 7, 10.) Plaintiff relies exclusively on original jurisdiction under 28 U.S.C. § 1331 for Counts 1, 2, and 3 of the FAC and supplemental jurisdiction under 28 U.S.C. § 1367(a) for the state-law claims in Counts 4 through 10.  (*See, e.g.*, FAC ¶¶ 4, 30.)  Plaintiff elected not to determine the citizenship of the Herald's members because to do so would require "considerable delay and also material out-of-pocket expense."  (*Id.*, ¶ 4.)  But Plaintiff was wrong to rely on his assertion of federal claims as a basis for jurisdiction over *every* claim.  State-law claims that are not sufficiently

4

10.)  Counts 4, 6, and 8 allege state-law claims for defamation, Counts 5, 7, and 9 allege state-law claims for false light invasion of privacy, and Count 10 alleges a state-law claim for intentional infliction of emotional distress ("IIED").  (*Id.*)

The state-law claims in Counts 4 through 9 alleging defamation and false light are based upon the same five (5) allegedly defamatory statements:

(1)     defendant Newslo's article attributing to Plaintiff the statement: "African Gorillas Control the White House Yet Still Whine About Racism," (FAC Count 4, ¶¶ 177-180; Ex. 1);

(2)     defendants Newslo's and Raw Story's articles asserting that Plaintiff was "whining" or is a "whiner," (FAC Counts 8, 9, ¶¶ 388, 395; Exs. 1, 2);

(3)     the MLive Defendants' reporting of Plaintiff's July 10, 2016, email referring to Judge Pittman as an "800-lb Silverback Alpha Male," (FAC Count 8, ¶¶ 364-368; Ex. 3);

(4)     the MLive Defendants' reporting of Judge Pittman's written response that Plaintiff's statement was "bigoted," (FAC Count 8, ¶¶ 353, 363, 378; Ex. 3); and

(5)     the MLive Defendants' reporting about the peer rating panel of local Muskegon attorneys rating the candidates, and their rating of Plaintiff as "1-star," (FAC Count 5, ¶¶ 251-252; FAC Count 6, ¶¶ 267-268, 277; FAC Count 7, ¶¶ 289-290).

With respect to MLive's reporting of Plaintiff's July 10, 2016, email and Judge Pittman's written

related to the federal claims, like those here, do not fall within the Court's supplemental jurisdiction. 28 U.S.C. § 1367(a); *see also, e.g.*, *Thomas v Chi. Housing Auth.*, 981 F. Supp. 558, 562 (N.D. Ill. 1997) (the court did not have supplemental jurisdiction to hear a state-law claim that was not sufficiently related to federal claim).  Moreover, even when state-law claims do fall within the Court's supplemental jurisdiction, this Court is not required to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c); *see also James v. Hampton*, 592 Fed. App'x 449, 462-63 (6th Cir. Jan. 7, 2015) ("supplemental jurisdiction is a 'doctrine of discretion, not of plaintiff's right.'") (quotation omitted) (all unpublished cases cited in this brief are attached in alphabetical order by case name as Group **Exhibit 6**).  The MLive Defendants, including the Herald, leave it to the Court's sound discretion whether to require Plaintiff to meet his obligation to establish subject matter jurisdiction, as previously ordered.  (RE 5.)  But, to aid the Court's decision, the Herald volunteers that it has no members with Texas citizenship or residency and, thus, it appears to be diverse from Plaintiff.  Consequently, although Plaintiff failed to meet his burden of alleging jurisdiction and failed to comply with this Court's Order to Show Cause, it appears that diversity jurisdiction may be present if Plaintiff's other allegations are accurate.  In any event, Plaintiff's claims against the MLive Defendants all fail as a matter of law as set forth in this brief, and the MLive Defendants seek the expediency of dismissal under Rule 12(b)(6).

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•300 OTTAWA AVENUE N.W., SUITE 700•GRAND RAPIDS, MICHIGAN 49503

response, Plaintiff alleges that his words were taken out of context or misinterpreted by readers. (FAC Count 8, ¶¶ 364-368.)   He further alleges that MLive's reporting of Judge Pittman's responsive statement was a republication of a defamatory statement calling Plaintiff a bigot. (FAC Count 8, ¶¶ 353, 363.)   According to Plaintiff, MLive's quotation of Judge Pittman constitutes MLive's "deliberate[] (and knowing[ly] false)" story that was "intentionally misleading and false" and included a "false story about completely phony racism and completely phony 'bigot[ry]' anyway."  (FAC Count 8, ¶¶ 363, 378.)

With respect to MLive's reporting of the Muskegon attorneys' peer rating panel, Plaintiff alleges that the MLive Defendants misrepresented the "'peer ratings' panel []as representative, selected through an appropriate and not ad-hoc process, and legitimate," and such reporting was allegedly "deceitful and intentionally misleading to the reading public."  (FAC Count 5, ¶¶ 251-252; FAC Count 6, ¶¶ 267-268, 277; FAC Count 7, ¶¶ 289-290.)   Plaintiff alleges that the panel's one-star rating of him was a "falsehood," and it was "fraudulent" for MLive to report the panel as "an actual 'peer review,' or that any panelists were actually 'peers' of the Plaintiff," and that MLive "fraudulently omit[ed] the entire news story that a specific law firm was seeking to rig the election for the financial interest of a specific candidate . . . ."  (FAC Count 7, ¶ 289.) Plaintiff alleges that MLive's reporting failed to report the "real story" or the "whole story" or the "more important" issues.  (FAC ¶¶ 254, 388.)

Finally, in Count 10, Plaintiff alleges the state-law claim of intentional infliction of emotional distress against all "Defendants" based upon the same conduct alleged in the first nine counts of the FAC.  (FAC, Count 10.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 12(b)(6) authorizes this Court to dismiss a

6

complaint for failure to state a claim if it fails to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson,* 355 U.S. 41, 47 (1957)). The Court reviews the complaint in a light most favorable to the non-moving party and accepts the allegations as true. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678; 129 S. Ct. 1937 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also First Am. Title Co. v. Devaugh*, 480 F.3d 438, 443-44 (6th Cir. 2007); *Allard v. Weitzman (In re Delorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993).

When considering a motion brought under Rule 12(b)(6), the court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting Rule 8(a)(2)). Thus, a plaintiff must do more than allege bare conclusions of law, and the court need not accept as true "legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987); *see also Nat'l. Hockey League Players Assn. v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 468

(6th Cir. 2005).

When considering a motion to dismiss under Rule 12(b)(6), the Court may consider the complaint and its exhibits, public records, items appearing in the record of the case, and documents referred to in the complaint and central to the claims. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999); *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## ARGUMENT

### I.  Plaintiff's Defamation Claims Regarding MLive's July 19, 2016, Internet News Article Are Time-Barred.

As a threshold matter, Plaintiff's defamation claims regarding the MLive Defendants' July 19, 2016, internet news article fail as a matter of law because they are barred by the 1-year statute of limitations.  Under MCL 600.5805(9), "[t]he period of limitations is 1 year for an action charging libel[.]"  The Michigan "Legislature has clearly provided that a defamation claim must be filed within one year from the date the claim *first accrued*."  *Mitan v. Campbell*, 474 Mich. 21, 24-25; 706 N.W.2d 420 (Mich. 2005) (emphasis in original), *citing* MCL 600.5805(9). Such a claim for defamation "first accrue[s] when the defamatory statement was made . . . ." *Mitan*, 474 Mich. at 25.

In this case, Plaintiff's defamation claims relate to three news stories published by the MLive Defendants – one story published July 19, 2016, another story published July 21, 2016, and a third story published August 3, 2016.  (*See* Exs. 3, 4, 5 (MLive news articles); *see also* FAC ¶ 283 (where Plaintiff alleges, "The specific text of the story published by The Herald and MLive are available online – these are Internet publications – and are incorporated herein by reference."); *see also* FAC Count 8, entitled "**Defamation on July 19, 2016**") (emphasis in

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•100 OTTAWA AVENUE N.W., SUITE 700•GRAND RAPIDS, MICHIGAN 49503

original).)  Yet, Plaintiff filed his complaint on July 20, 2017 (RE 1) – one day too late to bring any defamation claim based on the July 19, 2016, article.   Plaintiff's "claim first accrued when the [allegedly] defamatory statement was made on" July 19, 2016.  *Mitan*, 474 Mich. at 25.  The statements of the MLive article (all of which are 100% accurate, anyway) have been publicly available since their publication on July 19, 2016.  Thus, Plaintiff was required to file his defamation claim on or before July 19, 2017, which he failed to do by one day.  Accordingly, even if there were any merit to Plaintiff's defamation claims, which there is not for the reasons discussed in the following sections of this brief, the defamation claims regarding MLive's July 19, 2016, news article are time barred, cannot proceed, and should be dismissed with prejudice.[4]

## II.    Plaintiff's Defamation Claims Against The MLive Defendants Fail.

Even assuming Plaintiff's defamation claims regarding the July 19, 2016, news article were timely, *all* of Plaintiff's claims of defamation and false light against the MLive Defendants in Counts 4 through 9 of the FAC are frivolous and should be dismissed with prejudice.

Plaintiff's defamation and false light claims against all of the media defendants (not just the MLive Defendants) are based upon the five (5) allegedly defamatory statements set forth above in the Statement of Facts regarding: the "White House" and "whiner" statements of the Newslo and Raw Story articles; the peer rating panel of six Muskegon attorneys; and the exchange of words between Plaintiff and Judge Pittman.  (*See* FAC Count 4, ¶¶ 177-180; FAC Count 5, ¶¶ 251-252; FAC Count 6, ¶¶ 267-268, 277; FAC Count 7, ¶¶ 289-290; FAC Count 8,

---

[4] This includes, at minimum, all allegedly defamatory statements about Plaintiff's calling Judge Pittman an "800-lb Silverback Alpha Male" in Plaintiff's July 10, 2016, email, and Judge Pittman's response that the statement was "bigoted," as alleged in Count 8 of the FAC.  Only MLive's July 19, 2016, article reported on these men's statements, (Ex. 3), and Plaintiff is out of time to bring a claim based upon this news story (which was fully accurate anyway).  MLive's subsequent stories of July 21, 2016, and August 3, 2016, did not report on these statements, but rather focused exclusively on the ratings panel and the judicial election.  (Exs. 4, 5.)

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•300 OTTAWA AVENUE N.W., SUITE 700•GRAND RAPIDS, MICHIGAN 49503

¶¶ 363-368, 378, 388; FAC Count 9, ¶ 395.)

Plaintiff's claims fail as a matter of law.  For starters, the MLive Defendants did not make, repeat, republish, or otherwise print either of the statements regarding the White House and "whining" in the Newslo and Raw Story articles, as the MLive articles conclusively establish.  (*See* Exs. 3, 4, 5.)  Thus, those statements cannot form the basis of any of Plaintiff's claims against the MLive Defendants.

The statements in the MLive articles were all true, which is an absolute defense defeating Plaintiff's claims against MLive.  The individual lawyer defendants from Muskegon really did form a peer rating panel, as accurately reported by MLive.  That panel really did rate Plaintiff as 1-star, as accurately reported by MLive.  Plaintiff really did write an email on July 10, 2016, referring to Judge Pittman as an "800-lb Silverback Alpha Male."  Judge Pittman really did respond by saying that such statement was "bigoted."  Plaintiff does not dispute the accuracy of any of this, and not one of these allegedly defamatory statements was false or even remotely inaccurate, which defeats all claims against the MLive Defendants.

Even accepting Plaintiff's allegations as true, his own differing opinions about the legitimacy of the peer rating panel and their conclusions (which MLive also published), were reports about protected opinions of others, and were privileged.  Plaintiff has no right to try to dictate the content of MLive's accurate reporting or chill MLive's constitutionally-protected free speech.  Finally, Plaintiff, as a public figure complaining about news stories reporting on matters of public concern, must sufficiently plead or prove the required element of actual malice, but he cannot because there was none.  His bare, conclusory allegations are not accepted as true.

### A.  The MLive Defendants' News Stories Were 100% Accurate And Privileged.

Plaintiff cannot establish any of the elements of a claim for defamation.  "Michigan law

10

has traditionally defined a defamatory communication as one which 'tends so to harm the reputation of persons so as to lower them in the estimation of the community or to deter others from associating or dealing with them.'" *Locricchio v. Evening News Assn*, 438 Mich. 84, 115; 476 N.W.2d 112 (Mich. 1991) (citation omitted).  "A cause of action for libel encompasses four components: 1) a ***false*** and defamatory statement concerning the plaintiff, 2) an ***unprivileged*** communication to a third party, 3) ***fault*** amounting to at least negligence on the part of the publisher, and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication." *Locricchio*, 438 Mich. at 115-16 (emphasis added); *see also Mitan*, 474 Mich. at 24.

"A cause of action for libel requires a plaintiff to show defamatory meaning as well as falsity, fault, and publication." *Locricchio*, 438 Mich. at 116.  A court is prohibited from "imposing liability on a media defendant for facts it publishes accurately and without material factual omissions about public affairs."  *Id*. at 117; *see also* M.C.L. 600.2911(3) (statutory qualified privilege for reporting on public affairs).  "[S]peech on matters of public concern merits heightened protection under the First Amendment." *Locricchio*, 438 Mich. at 119. "Michigan law prohibits libel liability for true speech on matters of public concern." *Id*. at 121. When a plaintiff (even a private plaintiff) claims a defamatory "publication regarding an area of public concern, the constitution requires that the plaintiff bear the burden of proving falsity." *Rouch v. Enquirer & News*, 440 Mich. 238, 252; 487 N.W.2d 205 (1992).  The plaintiff must "prove 'malice' to defeat the qualified privilege to report on matters of public interest." *Peisner v. Detroit Free Press*, 421 Mich. 125, 137 n.12; 364 N.W.2d 600 (Mich. 1985).  Even where there is some falsehood in news reporting (although there was none here), "'the First Amendment requires that we protect some falsehood in order to protect speech that matters.'"

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•300 OTTAWA AVENUE N.W., SUITE 700•GRAND RAPIDS, MICHIGAN  49503

*Ireland v. Edwards*, 230 Mich. App. 607, 624; 584 N.W.2d 632 (Mich. Ct. App. 1998), citing

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341; 94 S. Ct. 2997 (1974); *Locricchio, supra* at 121.

These standards demonstrate that Plaintiff has no viable cause of action for "defamation" against the MLive Defendants because no statements were false or defamatory and, regardless, Plaintiff can never overcome MLive's qualified privilege to report on matters of public concern, nor can Plaintiff ever establish malice because there was none.

It is undisputed that the MLive Defendants' news stories did not republish or otherwise include any statement about "African Gorillas Control the White House," or "whining," as alleged by Plaintiff against defendants Newslo and Raw Story.  (*See* Exs. 3, 4, 5.)  Thus, although Plaintiff conclusorily alleges that the MLive Defendants are purported "feeder" papers for Newslo, (*see* FAC ¶¶ 196-200, 255), which is false, the MLive stories themselves establish beyond reproach that the MLive Defendants never published these statements.[5]

All of the statements in the MLive articles are indisputably true, which Plaintiff himself admits.  These statements include the undeniable facts that: (1) the individual lawyer defendants indeed formed a peer rating panel and rated Plaintiff as one-star, as MLive accurately reported; (2) Plaintiff deems the peer rating panel to be "bogus," and a "joke," as MLive accurately reported; (3) Plaintiff wrote the July 10, 2016, email in which he referred to Judge Pittman as an "800-lb Silverback Alpha Male," as accurately reported by MLive, and (4) Judge Pittman responded that Plaintiff's statement was "bigoted," as accurately reported by MLive.  Plaintiff cannot and does not dispute any of these facts.  Accordingly, his defamation claims all fail.

---

[5] Plaintiff "incorporated by reference" the MLive Defendants' news stories (FAC, ¶ 283), copies of which MLive has attached to this brief as Exhibits 3, 4, and 5.  Thus, the news stories are part of the pleadings, and they control over Plaintiff's inconsistent allegations.  *See Kreipke v. Wayne State Univ.*, 807 F.3d 768, 782 (6th Cir. 2015) ("when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."), citing *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012).

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•300 OTTAWA AVENUE N.W., SUITE 700•GRAND RAPIDS, MICHIGAN  49503

**B.      Hyperbolic Opinions Are Protected And Non-Defamatory.**

What Plaintiff really complains about is non-actionable opinion and hyperbole by individuals regarding the foregoing undisputed facts, as well as his not being able to control the manner in which MLive reported such items.  Thus, there is no cognizable defamation claim for MLive's reporting the protected opinions of others.

"[S]tatements are not actionable—and are protected by the First Amendment—if they cannot 'reasonably [be] interpreted as ***stating actual facts***.'"  *Armstrong v. Shirvell*, 596 Fed. App'x. 433, 2015 U.S. App. LEXIS 1782, at *13 (6th Cir. Feb 2, 2015) (emphasis added) (applying Michigan law), quoting *Jolliff v NLRB*, 513 F3d 600, 610 (6th Cir 2008) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)); *Garvelink v. Detroit News*, 206 Mich. App. 604, 522 N.W.2d 883 (Mich. Ct. App. 1994); *see also Ghanam v. Does*, 303 Mich. App. 522, 545-46, 845 N.W.2d 128 (Mich. Ct. App. 2014).  "Whether a communication is capable of bearing a particular meaning ***is a question of law***."  *Armstrong*, 2015 U.S App. LEXIS 1782, at *13 (emphasis added), citing *Jolliff*, 513 F3d at 610. "The court must determine whether a particular statement's 'general tenor' suggests that it can be read as stating ***an actual fact*** or is instead ***protected hyperbole***."  *Id* at *13-14 (emphasis added).

"In order to do so, this court applies a four-factor test:

(1) The common usage or meaning of the allegedly defamatory words themselves, whether they are commonly understood to be loose, figurative, or hyperbolic words;

(2) The degree to which the statements are verifiable, whether the statement is objectively capable of proof or disproof;

(3) The immediate context in which the statement occurs; and

(4) The broader social context into which the statement fits."

*Armstrong,* 2015 U.S. App. LEXIS 1782, at *14.

13

The "actual facts" in this case are that Plaintiff disseminated an email referring to Judge Pittman as an "800-lb Silverback Alpha Male," and Judge Pittman responded that Plaintiff's remarks were "bigoted." (Ex. 3) Another "actual fact" is that certain local Muskegon attorneys, who are individual defendants in this case, banded together to create a peer rating system for the election at issue, and rated Plaintiff as a "1-star" candidate, the worst possible rating in a 1 to 5 star system. No one can, and no one does, dispute these actual, underlying facts. These undisputed, actual facts are all that the MLive Defendants reported, which was 100% accurate.

Whether Plaintiff's opinion about Judge Pittman, including that he is a "bully," or Judge Pittman's opinion about Plaintiff's statements, including that they were "bigoted," or the peer panels' 1-star opinion of Plaintiff, or Plaintiff's opinion of the illegitimacy of the peer panel, have any credence whatsoever is of no moment as far as the MLive Defendants and the First Amendment are concerned, as those opinions are not defamatory as a matter of law. Those opinions by all of the respective individual actors, as accurately reported by MLive, are not actionable as defamation because they are protected opinion and hyperbole about facts that are fully disclosed and not disputed. In other words, there is nothing in the MLive Defendants' news stories that is remotely inaccurate or actionable under any theory.

The case of *Lilly v City of Clarksville*, 510 Fed. App'x 374, 2013 U.S. App. LEXIS 308, at *7 n4 (6th Cir. Jan 4, 2013), illustrates this point. In rejecting a defamation claim, the Sixth Circuit, applying Michigan law, explained that "[a] statement of ***opinion*** will not constitute defamation unless a statement implies an allegation of '***undisclosed defamatory facts*** as the basis of the opinion.'" *Id.* (emphasis added), citing *Orr v. Argus-Press Co.*, 586 F.2d 1108, 1114 (6th Cir. 1978). There was no actionable defamation in *Lilly* because the underlying facts "were all true and were disclosed, ***as were the facts underlying the opinion***." *Id.* (emphasis added).

14

"Thus, the statements were not defamatory."  *Id*.  As in *Lilly*, the facts of Plaintiff's and Judge Pittman's statements as well as the peer rating system and ratings "were all true and were disclosed," as Plaintiff admits.  Thus, as in *Lilly*, any opinions about those undisputed statements, even accepted as alleged by Plaintiff, "were not defamatory."  *See id*.  MLive has no liability for accurately publishing these facts and opinions, and has the right to such free speech under the First Amendment.

### C.    There Was No Malice By The MLive Defendants.

Finally, even if Plaintiff could establish any untrue, defamatory statement of fact rather than opinion that was not privileged by any MLive Defendant (he cannot), his defamation claims would still fail as a matter of law because he will never be able to adequately plead or establish actual malice by any MLive Defendant, because there was none.

When a public-figure plaintiff such as Plaintiff alleges defamation, he must prove malice by the defendant.[6]  *Lakeshore Cm'ty Hosp., Inc. v. Perry*, 212 Mich. App. 396, 402; 538 N.W.2d 24 (Mich. Ct. App. 1995).   Proof of malice is additionally required here to overcome the qualified privilege to report on a matter of public concern, as set forth above.  Showing actual malice in making a statement requires showing "knowledge of its falsity or reckless disregard of the truth."  *Prysak v. R L Polk Co.*, 193 Mich. App. 1, 15, 483 N.W.2d 629 (Mich. Ct. App. 1992) (citation omitted).   "General allegations of malice are insufficient[.]"  *Id.* (citation omitted).

---

[6] There is no question that Plaintiff was a "public figure" plaintiff for purposes of defamation law at the time of the alleged defamatory statements.  He was a judicial candidate running for election as a probate judge in Muskegon County.  As the Michigan Court of Appeals has concluded: "Candidates for public office are public figures for First Amendment/defamation purposes."  *Ulrich v. Shilling*, unpublished per curiam opinion of the Michigan Court of Appeals decided July 8, 2003 (Docket No. 237979), citing *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 271-272; 91 S. Ct. 621 (1971).

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•300 OTTAWA AVENUE N.W., SUITE 700•GRAND RAPIDS, MICHIGAN 49503

"The First and Fourteenth Amendments of the United States Constitution prohibit public figures from recovering damages caused by a defendant's statement **unless** they prove that the statement was a defamatory falsehood and that it was made **with actual malice**, that is, that it was made with knowledge that it was false or with reckless disregard of whether it was false or not." *Perry*, 212 Mich. App. at 404 (emphasis added), citing *New York Times Co. v. Sullivan*, 376 U.S. 254; 84 S. Ct. 710 (1964); *Curtis Publishing Co. v. Butts*, 388 U.S. 130; 87 S. Ct. 1975 (1967); *see also Biro v. Condé Nast,* 963 F. Supp. 2d 255, 276-280 (S.D.N.Y. 2013), *aff'd*, 622 Fed. Appx. 67 (2d Cir. Dec. 8, 2015). "The question whether the evidence is sufficient to support a finding of malice **is a question of law**." *Perry*, 212 Mich. App. at 404 (emphasis added), citing *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 685; 109 S. Ct. 2678 (1989).

Thus, even if Plaintiff could meet the other elements of his defamation claims (he meets none of them), Plaintiff would still have to adequately plead and establish actual malice by the MLive Defendants, which he cannot. He pleads the word "malice" in only the most conclusory fashion in the FAC without explaining any basis for believing that anyone from MLive was out to get him (they were not).[7] "General allegations of malice are insufficient[.]" *Prysak*, 193 Mich. App. at 15; *see also Morgan*, 829 F.2d at 12 (when considering a motion under Rule 12(b)(6), the court need not accept as true "legal conclusions or unwarranted factual inferences"); *Brady v. Chase Home Fin., L.L.C.*, No. 1:11-CV-848, 2012 U.S. Dist. LEXIS 72218, at *31-32 (W.D. Mich. May 24, 2012) (Quist, J.) (mere conclusory allegations parroting

---

[7] In paragraphs 333 and 334, Plaintiff attributes a possible motive to some of the individual attorney defendants, including that they may have "some degree of envy or jealousy" because they "had a different history" as law students and lawyers that was not as impressive as Plaintiff's history and "credentials," which "are very uncommon in the Muskegon legal market." Yet, Plaintiff offers nothing to explain why any of the MLive Defendants would maliciously defame him (they did not).

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·600 OTTAWA AVENUE N.W., SUITE 700·GRAND RAPIDS, MICHIGAN 49503

the law without providing "any factual 'meat' for [the] bare-bones claim" is insufficient to state a claim); *Biro*, 963 F. Supp. 2d at 279-280.

The court in *Biro, supra*, extensively analyzed the "actual malice" pleading standard for public-figure-plaintiff defamation claims. 963 F. Supp. 2d at 276-280. "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id.* at 276 (citation omitted). Actual malice "cannot be premised solely on the fact that an article is one sided," as "[t]he fairness of the broadcast is not at issue in the libel suit." *Id.* (quotation omitted). Absent direct evidence of actual malice, courts have found circumstantial evidence of actual malice in cases where: "a story is fabricated or is based wholly on an unverified, anonymous source;" or "the defendant fabricates a statement made by a source;" or "the defendant's allegations are so inherently improbable that only a reckless person would have put them in circulation;" or "there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports;" or "the defendant has a motive for defaming the plaintiff;" or "the defendant knows or suspects that it has committed an error and refuses to acknowledge it;" or "the words or acts of the defendant before, at, or after the time of the communication indicate that the defendant knew that his or her statement was or may well have been false." *Id.* at 277-78 (citations omitted). None of those circumstances exist in this case.

Not only is "proving actual malice a heavy burden," *id.* at 278 (citation omitted), but, "in the era of *Iqbal* and *Twombly*, pleading actual malice is a more onerous task as well." *Id.* (citation omitted). "[W]here a particular state of mind is a necessary element of a claim, [ ] pleading of that state of mind must be plausible and supported by factual allegations." *Id.*, citing *Iqbal*, 556 U.S. at 686-87. "Rule 12(b)(6) should play a particularly important role in testing the plausibility of a plaintiff's defamation claim." *Id.* at 279, citing *Twombly*, 550 U.S. at 558-59.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•300 OTTAWA AVENUE N.W., SUITE 700•GRAND RAPIDS, MICHIGAN 49503

"In other words, in defamation cases, Rule 12(b)(6) not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive." *Id*. The First Circuit has provided "a useful road map for courts determining whether a defamation plaintiff has sufficiently alleged actual malice: 'To begin, the court must strip away and discard the complaint's conclusory legal allegations.'" *Id*. at 280, quoting *Shay v. Walters*, 702 F.3d 76, 82-83 (1st Cir. 2012). "'Next, the court must determine whether the remaining factual content permits the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*., citing *Shay*, 702 F.3d at 82-83.

Plaintiff has utterly failed to support his defamation claims against the MLive Defendants with any facts to support his purely conclusory references to "malice." His failure to plead actual malice alone warrants dismissal of all defamation, false light, and IIED claims asserted against MLive. *Ireland*, 230 Mich. App. at 624 (the First Amendment limitations on defamation claims against media defendants applies not only to defamation claims, but also to false light and IIED claims).

## III.   The MLive Defendants Are Entitled to Judgment On The "False Light" Claims.

Plaintiff's claims for "false light" in Counts 5, 7, and 9 of the FAC fail as a matter of law and should be dismissed with prejudice for the same reasons that the defamation claims all fail. There were no false statements, and, because Plaintiff is a public figure, his false light claims also require a showing of malice, which, as set forth above, he did not and cannot sufficiently plead.

"Michigan courts recognize four distinct common-law privacy torts: (1) intrusion into a person's seclusion, solitude, or private affairs; (2) public disclosure of embarrassing private facts

18

about a person; (3) publicity that portrays a person in a false light; and (4) appropriation for gain of a person's image or likeness." *Baggs v. Eagle-Picher Indus., Inc.*, 957 F.2d 268, 273 (6th Cir. 1992), citing *Lewis v. Dayton-Hudson*, 128 Mich. App. 165, 339 N.W.2d 857, 858 (Mich. Ct. App. 1983); *Beaumont v. Brown*, 401 Mich. 80, 257 N.W.2d 522, 527 n.10 (Mich. 1977). "Under Michigan law, to be actionable an invasion of privacy must be unreasonable and serious, and supersensitiveness is not protected." *Cole v. Dun & Bradstreet Publs Corp.*, 667 F.2d 1025, 1981 U.S. App. LEXIS 16670, at *8 (6th Cir. Oct. 22, 1981) (citing *Reed v. Ponton*, 15 Mich. App. 423, 426 (Mich. Ct. App. 1968)).

In this case, Plaintiff alleges the third variety of privacy invasion, *i.e.*, the "false light" variety.  (*See* FAC Counts 5, 7, and 9.)  "In order to state a false light claim under Michigan law, the statements complained of must be: (1) unreasonable and highly objectionable publicity attributing to the plaintiff characteristics, conduct or beliefs that are false and place him in a false position; and (2) presented to the public." *McGhee v. Sanilac Cnty,* 934 F.2d 89, 94 (6th Cir. 1991) (citing *Morganroth v. Whitall*, 161 Mich. App. 785, 792-94, 411 N.W.2d 859 (Mich. Ct. App. 1987); *Sawabini v. Desenberg*, 143 Mich. App. 373, 380-82, n.3, 372 N.W.2d 559 (1985)). "The defendant 'must have had knowledge of or acted in a reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'" *Binion v. O'Neal*, No. 14-13454, 2015 U.S. Dist. LEXIS 43456, at *8 (E.D. Mich. April 2, 2015) (citing *Duran v. The Detroit News*, 200 Mich. App. 622, 632, 504 N.W.2d 715 (Mich. Ct. App. 1993)).  "[T]ruth is a defense to a false light claim," *i.e.*, "truth of the publication defeats a false light claim." *McGhee*, 934 F.2d at 94.

As an initial matter, and as set forth above, Plaintiff has failed to identify a single "false" statement in the reporting by the MLive Defendants, let alone any statements that were

19

"unreasonable and highly objectionable," or made with "reckless disregard," which independently defeats Plaintiff's false light claims against MLive. *See McGhee*, 934 F.2d at 94. Nor can Plaintiff plead or establish "malice," or overcome any other limitation to his false light claims under the First Amendment.

In *Ireland*, 230 Mich. App. at 624, the court clarified that all of the limitations on defamation claims against media defendants which are grounded in the First Amendment right of free speech apply with equal force to other claims, regardless of labels, as a plaintiff cannot artfully plead around such protections. The *Ireland* court affirmed dismissal of the plaintiff's false light invasion of privacy and intentional infliction of emotional distress claims on the same bases applicable to a defamation claim. The *Ireland* court confirmed that such "limitations on actionability (statements must be provable as false, statements must be understandable as stating actual facts about the plaintiff, and, in the case of public-official or public-figure plaintiffs, the plaintiffs must prove actual malice by clear and convincing evidence) are First Amendment limitations." *Ireland*, 230 Mich. App. at 624, citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46; 108 S. Ct. 876 (1988).

Further, "[i]t is clear that these limitations are not exclusive to defamation claims." *Ireland*, 230 Mich. App. at 624. The *Ireland* court concluded that "these limitations apply to all of plaintiff's claims in this case," which included plaintiff's false light and IIED claims. *Id.* The "false light invasion of privacy or intentional infliction of emotional distress" claims had no "greater right to [ ] immunity" from the First Amendment free speech protections, and "any other conclusion would allow a plaintiff to circumvent the First Amendment limitations, and would effectively eliminate the 'breathing space' required for freedom of expression." *Id.* at 624 n.15, citing *Hustler Magazine, supra* at 52. The *Ireland* court concluded that "all of plaintiff's claims

20

[were] based on the same statements," but she had not shown malice, *id*. at 623, nor could she "overcome the First Amendment limitations regarding these statements[.]" *Id*. at 624.

The principles and outcome of *Ireland* squarely apply here. As set forth above regarding the defamation claims, Plaintiff failed to adequately allege malice beyond mere legal conclusions, and he cannot allege or establish malice because there was none. More fundamentally, he has failed to identify a single false statement or even the slightest inaccuracy published by the MLive Defendants, let alone something so false and so reckless as to exceed the constitutionally afforded "breathing space" for free speech by the media under the First Amendment. Accordingly, Plaintiff's false light claims against the MLive Defendants should be dismissed with prejudice.

## IV.    **Plaintiff Failed To State An IIED Claim.**

Plaintiff's 75-page, 408-allegation FAC is anything but "short and plain." *See* Fed. R. Civ. P. 8(a). But the lone aberration is Plaintiff's Count 10 for alleged "Intentional Infliction of Emotional Distress," or IIED. The IIED claim takes up half of one page in only five paragraphs of conclusory assertions of the elements of an IIED claim without providing any supporting facts as to how Plaintiff in fact suffered emotionally. Nor does Plaintiff specify any one of the at least twenty-six defendants he haled into court, but instead conclusorily asserts that "all the defendants" caused him such emotional harm. (FAC ¶ 404.) In short, Plaintiff has failed to state an IIED claim. In any event, pleading deficiencies aside, it is axiomatic that Plaintiff cannot recover for IIED where none of his underlying claims against the MLive Defendants have any merit, as the publications were 100% true and privileged, and Plaintiff failed to, and cannot, sufficiently plead malice.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•300 OTTAWA AVENUE N.W., SUITE 700•GRAND RAPIDS, MICHIGAN 49503

To state a claim for IIED, "a plaintiff must show (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Teadt v. Lutheran Church Missouri Synod,* 237 Mich. App. 567, 582; 603 N.W.2d 816 (Mich. Ct. App. 1999) (citation omitted).  Liability for IIED has been found "only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Teadt,* 237 Mich. App. at 582-583.  When a plaintiff sues a media defendant for IIED based upon a news publication, the same "limitations on actionability" that apply to defamation and false light claims apply to the IIED claim.  *Ireland*, 230 Mich. App. at 624.  These limitations on actionability include that it is Plaintiff's burden establish the falsity of any statement, that the alleged statement is understandable as stating actual facts about the plaintiff, and, in the case of public-official or public-figure plaintiffs, like Plaintiff here, he must prove actual malice by clear and convincing evidence.  *Id*.

As the Court explained in *Hajciar v. Crawford & Co*., 142 Mich. App. 632, 636-37; 369 N.W.2d 860 (Mich. Ct. App. 1985):

> "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'  The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."

142 Mich. App. at 639 n.1 (citing *Holmes v. Allstate Ins. Co.,* 119 Mich. App. 710, 714-715; 326 N.W.2d 616 (Mich. Ct. App. 1982)).   Plaintiff's bare allegations consisting of mere legal conclusions under Count 10 for alleged IIED do not meet this high standard (especially where Plaintiff cannot even establish falsity or malice for his defamation and false light claims, as discussed above).   *See Morgan*, 829 F.2d at 12 (the court need not accept as true "legal conclusions or unwarranted factual inferences"); *see also Brady*, 2012 U.S. Dist. LEXIS 72218, at *31-32 (mere conclusions parroting the law without providing "any factual 'meat' for [the] bare-bones claim" are insufficient).

The MLive Defendants did their jobs.   They accurately reported about a public figure judicial candidate (Plaintiff) on an issue of public concern (a judicial election).   Plaintiff cannot, and does not, dispute the correctness and accuracy of the MLive Defendants' reporting.   Rather, he would simply prefer to stifle MLive's free speech, tell MLive how to run its business, and control the flow and content of information to the public, putting more emphasis, focus, and spin on the things he deems to be the "real story" or "whole story" or "more important" issues in the light most advantageous to him.   (*See, e.g.,* FAC ¶¶ 254, 388.)   The Constitution says he doesn't get to do that.   There was nothing untrue or improper in MLive's reporting, let alone "outrageous," or "atrocious, and utterly intolerable" or done with "malice."   As discussed above, Plaintiff overcomes none of the limitations on his claims attempting to curb MLive's free speech. *Ireland*, 230 Mich. App. at 623-24 & n.15.   The IIED claim must be dismissed with prejudice.

## V.      Plaintiff Failed To Adequately Plead Damages For Any Claim.

The running theme through Plaintiff's FAC is that the media publications caused him "devastating" harm to his reputation, loss of business as a practicing attorney, and emotional suffering.   (*See, e.g.*, FAC ¶ 404.)   But, beyond just saying those things in conclusory fashion,

Plaintiff offers nothing to remotely quantify or establish these alleged damages.  Damages is a required element of each of his state-law claims for defamation, false light, and IIED against the MLive Defendants.  *See Koester v. VCA Animal Hosp.*, 244 Mich. App. 173, 177; 624 N.W.2d 209 (Mich. Ct. App. 2000) ("plaintiff's complaint failed to plead legally cognizable damages and was properly dismissed by the trial court").  Plaintiff failed to adequately allege the required damages element of his claims.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants Stephen Kloosterman, MLive Media Group, an unincorporated division of The Herald Publishing Company, LLC, d/b/a Muskegon Chronicle, and The Herald Publishing Company, LLC, d/b/a Muskegon Chronicle, respectfully request that the Court (1) grant this motion to dismiss under Fed. R. Civ. P. 12(b)(6); (2) dismiss Plaintiff's First Amended Complaint (RE 7) in its entirety with prejudice as against the MLive Defendants; (3) enter judgment for Kloosterman, MLive, and the Herald; and (4) grant such further relief as the Court deems just.  Any request by Plaintiff for leave to amend for a second time should be denied on futility grounds because the foregoing bases for dismissal are absolute bars to Plaintiff's meritless claims.  *See Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010).

Dated: November 2, 2017

Respectfully submitted,

By: /s/ Mark J. Magyar
James S. Brady (P11110)
Mark J. Magyar (P75090)
Dykema Gossett PLLC
Attorneys for Defendants The Herald Publishing
Company, LLC, MLive Media Group, and
Stephen Kloosterman
300 Ottawa Avenue, N.W., Suite 700
Grand Rapids, MI  49503
Telephone:  (616) 776-7532

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•300 OTTAWA AVENUE N.W., SUITE 700•GRAND RAPIDS, MICHIGAN  49503