UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Eric C. Grimm, | |
|     Plaintiff, | |
| vs. | Civil Action No. 17-cv-654 |
| Raw Story Media, Inc., The Herald Publishing Company, LLC, MLive Media Group, f/k/a Booth Newspapers, Inc., Newslo, Stephen Kloosterman, Kevin Even, Paul Shibley, Brianna Scott, David Bossenbroek, Matt J. Roberts, David Shafer, Barton Dieters, Gregory C. Pittman, Williams \| Hughes, PLLC, Douglas Hughes, Theodore N. Williams, Jr, Timothy Hicks, William Marietti, Kathy Hoogstra, Robert Carter, Raymond Kostrzewa, Linnea Kostrzewa, Mark T. Boonstra, Neil Mullally, Vicki Broge, and the County of Muskegon, | Hon. Gordon J. Quist<br>United States District Judge<br><br>Hon. Phillip J. Green<br>United States Magistrate Judge |

Eric C. Grimm (P58990)
ERIC C. GRIMM, PLLC
1017 West South Street
Alvin, TX  77511
Main: (734) 717-4900
Fax: (888) 502-1291
Email:  ecgrimm@umich.edu
Attorney for Plaintiff.

**VERIFIED PETITION RE: SERVICE OF PROCESS**

On November 3, 2017, the Court kindly provided a Notice, requesting that a filing be made on or before November 24 2017, titled "Verified Petition re: Service of Process." This filing is submitted consistent with the request set forth in the Court's notice. The purpose of this Verified

Petition is to help clarify the facts and the circumstances of service.

Service has been made or attempted on **all** of the Defendants that are referenced in the Court's Notice, who are subject to Rule 4(m).  Rule 4(m) does not apply to one Defendant – namely, Newslo.  As both the Original Complaint and the Amended Complaint already pointed out Newslo is a special case – and not just because the individual behind the (unincorporated) brand name is located overseas.  It is a special case because Newslo took active measures to conceal its identity in an active effort to avoid accountability for its unlawful behavior.

Plaintiff has invested considerable time and effort tracing Newslo, and has sufficient information now to serve the defendant.  Now that we have developed the investigative leads necessary to serve Newslo, the appropriate paperwork will follow forthwith.

Four of the Defendants referenced in the court's Notice are attorneys who have been visited <u>multiple</u> times by <u>multiple</u> professional process servers, on the Plaintiff's behalf.  If they have not been served prior to today, then it has **absolutely nothing** to do with any fault <u>of the Plaintiff.</u>  Plaintiff made sure that they all had Summons within a matter of days of the filing of the lawsuit.  Plaintiff made sure they all had the Complaint, prior to the filing of any Amended Complaint.  Plaintiff sent a professional process server to serve each of them personally, well in advance of any notice by the Court and with plenty of time remaining to complete service under the Court Rules.  These four attorney-defendants have not been served due to **these Defendants**' **own** active malfeasance – actively seeking to "duck service," not due to any malfeasance by the Plaintiff.

Because the <u>purpose</u> of Rule 4 – namely, providing fair notice of a pending lawsuit, and of the need to defend – has been fully satisfied as to the 4 attorneys, and the Plaintiff has made entirely reasonable efforts to get them served, Plaintiff proposes that the 4 attorneys should be deemed

served, so as to provide a date certain (the date of the Order so deeming them notified) for each of them to answer or otherwise respond. Requiring the Plaintiff to expend further resources and time chasing attorneys who (1) already have the Summons; (2) already have the Complaint; and (3) are merely playing "ducking service" games in bad faith despite actual notice of the lawsuit, would be grossly inequitable and unreasonable. Nor should the Plaintiff be actively prejudiced by the 4 attorneys' bad-faith gamesmanship. A "without prejudice" dismissal would be wasteful of everyone's resources, including the resources of the Plaintiff, because it will inevitably stimulate a cottage industry of satellite litigation related to the Statute of Limitations for defamation cases. Such shenanigans on the part of the 4 attorneys should never be rewarded by any court. Accordingly, the most sensible thing is to recognize that the fair notice function of Rule 4 has been satisfied (and was satisfied in July, 2017 – not to elevate form over substance to the prejudice of the Plaintiff.

If the Court really insists that Plaintiff continue playing cat-and-mouse with these defendants, then a modest extension of time as contemplated in the Court's Notice is requested. That said, it is far from clear what sending additional process servers out to chase these Defendants around will accomplish other than multiplying expenses needlessly.

Net, Plaintiff respectfully asks the Court to note that an *in forma pauperis* petition accompanied the filing of the Complaint in July 2017 (plaintiff was able to raise funds to pay the filing fee out-of-pocket – barely – shortly thereafter). Plaintiff cannot overstate how bad the acute financial distress has been that Plaintiff has been experiencing (as a result of malfeasance principally by several of the Defendants, and the word getting out in the Muskegon business community that Plaintiff had been "blackballed" by the local courthouse and the clique running it) from January 28,

2015 (see Complaint for the significance of this date), and continuing past the time of Plaintiff's relocation out of state in April, 2017. Plaintiff's severe financial distress (largely stemming from the events alleged in the Complaint and the active wrongdoing of the Defendants), did not halt suddenly upon Plaintiff's relocation to Texas. In some ways, many problems were amplified over the short run by the challenges normally associated with moving and relocation. In other ways, Plaintiff has been able gradually to begin digging out of a deep financial hole stemming from the events alleged in the Complaint. The Amended Complaint was filed in August, 2017. About two weeks after that (while Plaintiff was still working hard to raise the funds needed to perform service), Hurricane Harvey dumped thirty-three trillion (with a "t") gallons of water on the Greater Houston area. The weather station nearest Alvin, Texas (where Plaintiff was staying) in Brazoria County,[1] set one of several new records within the continental U.S. for the most rainfall – anywhere, ever. Only Mount Waialeale, on the island of Oahu, Hawaii – if one considers the entire (not just continental) U.S. – surpasses the impact of Harvey on Harris and Brazoria Counties.

The entire month of September, Plaintiff had to rely on the good graces of FEMA for temporary shelter, and until quite recently, Plaintiff did not even have a place of his own to live (Plaintiff was dependent on the charity of others for even a roof over his head). Plaintiff still does not have his own ground transport (the cost of using Uber or Lyft to access the Post Office, therefore serving as another prohibitive barrier to completing service on recalcitrant Defendants).

---

[1] Alvin also was the prior record-holder.
http://www.chron.com/news/houston-texas/texas/article/After-35-years-Alvin-still-holds-U-S-record-for-5644837.php   The following clip from ABC News provides a sense of how bad the flooding from Harvey was in BrazoriaCounty:
http://abcnews.go.com/US/harvey-shatters-us-rainfall-record-tropical-system-national/story?id=49491827.

The good news is this: Things are turning around. Plaintiff is finally digging out of the financial challenges that followed him to Texas from Michigan. As of the week of November 20, 2017 (but not sooner), Plaintiff has seen a considerable surge in revenues from work-in-process from paying clients, that Plaintiff hopes will be sustained in future months. This alone has made it possible to pay to have service completed on all the Defendants listed by the Court in its Notice dated November 3. Before November 20, Plaintiff was struggling to pay for basic necessities.

While some moralistic wags in certain parts of Michigan will always blame the poor for their plight; in reality Plaintiff has been working on client matters quite diligently since the day he arrived in Texas. But especially with contingent cases, it takes some time and patience (and moral fortitude – as illustrated by Walter Mischel's work on The Marshmallow Experiment) to stick it out until the revenue starts arriving. This month, and we hope in the next few months, should put Plaintiff in a much better position to afford to sustain this litigation for the duration. Accordingly, myopic moralism, and victim-blaming aside, Plaintiff will stack his penchant for industry up against any attorney in Michigan, and just point out that Plaintiff's efforts in this new location are generating significant dividends, even after the hurricane-related setbacks. The simple reality is that Plaintiff has been doing his level best (against enormous financial odds) to get service accomplished with alactrity, and has **amazing** results and success to show for efforts accomplished on a shoestring.

Plaintiff, therefore, respectfully prays for the Court to extend the Plaintiff's deadline to complete service on **all** Defendants for a reasonable amount of time (one month) corresponding to the time that Plaintiff was reliant upon FEMA for shelter and lodging. This is hardly an unreasonable request.

Plaintiff also specifically, and respectfully, requests that four specific defendants who have

been substituting gamesmanship for their duties as licensed attorneys (for instance, consider the Civility Principles adopted by both the Eastern District of Michigan and the Western District – which caution against behaviors that are calculated to create unfair prejudice, that are calculated to drive up costs unnecessarily, and that are calculated to interfere with the orderly and efficient administration of justice), be deemed served – effective immediately. The defendants who already have received more than adequate notice about the pending lawsuit, who know they need to Answer, and who nonetheless are playing games "ducking service" are: (1) David Bossenbroek, (2) Brianna Scott, (3) David Shafer, and (4) Paul Shibley. The behavior of these four attorneys should be contrasted with the conduct of three others.

Kevin Even did **not** duck service, when the process server arrived at his firm, and deserves to be recognized for that. Likewise, Doug Hughes did **not** attempt to duck service, either for Hughes, personally, or for Williams, Hughes, PLLC. The Court also respectfully is advised that an on-the-ground process server (now, two different companies have been dispatched to do the job) was dispatched to complete service on Hughes, on Even, on Scott, Bossenbroek, Shafer, and on Shibley, **prior** to the issuance of any Order or Notice by this Court relating to service of Summons. Despite suffering a rather pronounced economic hardship (largely as a result of the misconduct of the Defendants), Plaintiff already has been and was diligently working (income permitting) on getting all defendants served **prior** to receiving any Notice from the Court.

Defendant Matt Roberts (of the Muskegon County Prosecutor's Office) received a Request for Waiver in July, 2017 – at the very same time that Bossenbroek, Scott, Shibley, and Shafer all received the same thing as a courtesy. **Only** Matt Roberts did the right thing and waived service, in the interest of efficiency and justice. We did not even need to send an on-the-ground process

server after Roberts. There is no possibility of unfair prejudice to Scott, Bossenbroek, Shibley, or Shafer – because they all knew about the pending lawsuit within days of when the lawsuit was filed, and have known about it for months. If they claim "prejudice," it is as a sole result of their own voluntary delay (in contrast to Roberts).

The Court may also be interested to know that Raw Story Media received notice of the lawsuit in July, 2017 (months ago) and is in no position whatsoever to claim any unfair prejudice.

Plaintiff has made a considerable effort to make sure that Raw Story Media promptly received fair notice and an opportunity to defend on the merits, immediately following the filing of the lawsuit. Correspondence ensued (in both directions) in July and August, 2017, after Raw Story "lawyered up" with the firm of Bernabei and Kabat, in Washington, D.C.

There was nothing the least bit out of place in the waiver of service papers (including postage stamp) provided to Raw Story Media. At this point, what remains is the formality of sending certified mail to two addresses (one in Tallahassee and the other in Boston), in order to move for sanctions against Raw Story for unnecessarily increasing costs and manufacturing delay. The certified mail has been sent prior to the filing of this Verified Petition (Plaintiff simply did not have funds – due to financial hardship to send the packages any sooner, and should hardly be prejudiced on the merits due to the very financial difficulties flowing directly from the wrong-doing of multiple Defendants. It would be absurd to reward the Defendants for tortious misconduct merely because the harm was so great to the Plaintiff that Plaintiff had difficulty paying to fund any effort to secure justice. An equitable approach is more reasonable.

To assist the Court, Plaintiff respectfully provides the status of service on each of the Defendants (in order as listed in the Caption of the Amended Complaint):

1. **<u>Raw Story Media, Inc.</u>**

Was provided with complete (including postage stamp) Rule 4(d) waiver papers in July, 2017. Has hired legal counsel (but not local counsel) to defend. Raw Story Media is on notice of the pending lawsuit, and has been on notice for months. The Company has nonetheless refused to waive formal service of summons.

Certified mail (return receipt requested), including the summons, and both the Complaint and the Amended Complaint, has therefore been dispatched to the Registered Agents for Raw Story Media, Inc., at:

> CORPORATION SERVICE COMPANY
> 84 STATE STREET
> BOSTON, MA 02109 USA

and

> CORPORATION SERVICE COMPANY
> 1201 HAYS STREET
> TALLAHASSEE, FL 32301-2525

Documentation that service papers have been sent, and service paid-for, is available to the Court on request. The Petition to give the Plaintiff a brief extension of time for the already-mailed service papers to arrive should be GRANTED because granting it will result in no prejudice whatsoever to Raw Story (which has had months of fair notice and the opportunity to defend) but if not granted could result in needless cost and delay for the plaintiff – and a very real likelihood of prejudice to the Plaintiff on the merits because of the short statute of limitations that exists in Michigan in defamation cases.

2. **<u>The Herald Publishing Company, LLC</u>**.

Has waived service, appeared through counsel, and is defending on the merits.

3. **<u>Mlive Media Group, f/k/a Booth Newspapers, Inc.</u>**,

Same as The Herald Publishing Company. Has waived service, appeared through counsel, and is defending on the merits.

4. **Newslo**.

Rule 4(m) does not apply. Summons is being requested; will attempt service through International Convention with Israel.

5. **Stephen Kloosterman**.

Same as The Herald Publishing Company. Has waived service, appeared through counsel, and is defending on the merits.

6. **Kevin Even.**

Has been served with summons by process server.

7. **Paul Shibley.**

Was notified of lawsuit and provided the Summons and Complaint in July, 2017.

Prior to any notice by the Court, a process server from Muskegon, Michigan, was hired to perform personal service on Attorney Shibley. After multiple attempts were made, the company wrote the Plaintiff to express the opinion that Shibley was purposefully ducking or evading service. Shortly thereafter (what happened in between is unclear), the process serving company ended the assignment by declining to continue the project, and urged that an out-of-Muskegon process server be hired. An out-of-Muskegon process server *has* been hired, which company promised to get right on this project. Still, no success has been reported on this project. Inasmuch as Shibley already has an electronic copy of the Summons (just like Roberts, as well as the entire Complaint, and the Amended Complaint has been tendered repeatedly, Plaintiff respectfully suggests that fair notice completely fulfilling the purpose of Rule 4 already has been accomplished, and that Shibley

should be deemed "served" and directed to defend or default, without further delay.

8. **Brianna Scott**.

Same as Shibley. Has known about the lawsuit, and had the Summons and Complaint since July, 2017. Scott is merely "ducking service" for improper, prejudicial, and dilatory, reasons.

Should be deemed "served" and directed to defend or default, effective immediately.

In addition to being provided prompt notice of the lawsuit, immediately after it was filed, Scott also has had two different process service companies dispatched to perform personal service on her.

9. **David Bossenbroek**.

Same as Shibley. Has known about the lawsuit, and had the Summons and Complaint since July, 2017. Bosenbroek is merely "ducking service" for improper, prejudicial, and dilatory, reasons.

Should be deemed "served" and directed to defend or default, effective immediately.

In addition to being provided prompt notice of the lawsuit, immediately after it was filed, Bossenbroek also has had two different process service companies dispatched to perform personal service on him.

10. **Matt J. Roberts**.

Has waived service, has appeared, and is defending.

11. **David Shafer**.

Same as Shibley. Has known about the lawsuit, and had the Summons and Complaint since July, 2017. Bosenbroek is merely "ducking service" for improper, prejudicial, and dilatory, reasons.

Should be deemed "served" and directed to defend or default, effective immediately.

In addition to being provided prompt notice of the lawsuit, immediately after it was filed, Bossenbroek also has had two different process service companies dispatched to perform personal service on him.

12. **Barton Dieters.**,

Two different process service companies have been hired to serve Dieters. The first company discontinued the assignment after receiving push-back from certain Muskegon attorneys.

Plaintiff is attempting in good faith to accelerate the service on this Defendant, not seeking to delay service. If the deadline for service on this Defendant is extended, Plaintiff is happy to assign even more personnel to the task of getting Dieters served prior to December 22, 2017.

13. **Gregory C. Pittman**.

Has waived service, appeared through counsel, and is defending.

14. **Williams | Hughes, PLLC**

|Has been personally served, appeared through counsel, and is defending.

15. **Douglas Hughes.**

Has been personally served, appeared through counsel, and is defending.

16. **Theodore N. Williams, Jr.**

Plaintiff is in communication with attorney Stephen Stapleton (same attorney defending Hughes and the law firm) about securing the address of the Personal Representative of the Estate of Theodore N. Williams, Jr. Plaintiff expects to be able to complete service on or before December 22, 2017. Williams is deceased and cannot be served, except by presenting a claim to Williams's Estate. Plaintiff expresses gratitude to Stapleton (a former professional colleague of Hughes and

Williams in the same firm) for Stapleton's help in this regard.

17. **Timothy Hicks**.

Has waived service, appeared through counsel, and is defending.

18. **William Marietti.**

Has waived service, appeared through counsel, and is defending.

19. **Kathy Hoogstra.**

Has waived service, appeared through counsel, and is defending.

20. **Robert Carter**

Carter was added to the case in the Amended Complaint, and 120 days has **not** elapsed either from the filing of the Amended Complaint, or from the issuance of Summons specific to Robert Carter. Service is being accomplished by certified mail, return receipt requested, using former Sheriff Carter's home address, 1823 King's Court, Muskegon, MI 49445. If the certified mail is returned, we will promptly notify the Court in time to send a process server to the physical address. However, it is reasonably believed that Carter will sign for his mail, and service can be accomplished on or before December 22, 2017.

21. **Raymond Kostrzewa**.

Has waived service, appeared through counsel, and is defending.

22. **Linnea Kostrzewa**.

Ms. Kostrzewa already knows about the lawsuit, because her husband is a Defendant. Kostrzewa was added to the case in the Amended Complaint, and 120 days has **not** elapsed either from the filing of the Amended Complaint, or from the issuance of Summons specific to Linnea Kostrzewa. Service is being accomplished by certified mail, return receipt requested, Kostrzewa's

home address, 4111 Braeburn Drive, Norton Shores, MI 49441-5628. If the certified mail is returned, we will promptly notify the Court in time to send a process server to the physical address. However, it is reasonably believed that Kostrzewa will sign for her mail, and service can be accomplished on or before December 22, 2017.

23. **Mark T. Boonstra**.

Boonstra was added to the case in the Amended Complaint, and 120 days has **not** elapsed either from the filing of the Amended Complaint, or from the issuance of Summons specific to Mark Boonstra. Service is being accomplished by certified mail, return receipt requested, using Boonstra's residential address, 6131 140th Avenue; Holland, MI 49423. If the certified mail is returned, we will promptly notify the Court in time to send a process server to the physical address. However, it is reasonably believed that Boonstra will sign for his mail, and service can be accomplished on or before December 22, 2017.

24. **Neil Mullally**.

Has waived service, appeared, and is defending.

25. **Vicki Broge**.

Broge was added to the case in the Amended Complaint, and 120 days has **not** elapsed either from the filing of the Amended Complaint, or from the issuance of Summons specific to Vicki Broge. Service is being accomplished by certified mail, return receipt requested, using the following two address (both Delivery Confirmation and Certified Mail are being used to double-serve Ms. Broge): P.O. Box 311; Muskegon, MI 49443, and 8 W Walton, Muskegon, MI 49443. These are the addresses at which Ms. Broge lists herself as Resident Agent for "West Michigan Moneyminders, LLC," a company she has formed. If the certified mail is returned, we will promptly

notify the Court in time to send a process server to the physical address. However, it is reasonably believed that Broge will sign for her mail, and service can be accomplished on or before December 22, 2017.

26. **Washington Times**.

On review, it appears that Washington times was not listed in caption, but it is still listed in the Amended Complaint. Now that Plaintiff is in a position, financially, to afford to duplicate the pleadings and to send certified mail to this Defendant, it has been sent both to the Registered Agent for Washington Times, and to the Headquarters of the newspaper in the District of Columbia.

As stated above, Plaintiff's income, as of late November, 2017, is now staring to recover to enough of an event that Plaintiff can pay for basic living expenses (shelter, medical, soon, maybe even transport), with some left over for legal expenses. Accordingly, the first time that Plaintiff has been able to afford, financially, to pay for a mass-service of multiple defendants has been in the past one week. Prior to that, Plaintiff was struggling even to pay the court filing fees, or for service of even a handful of Defendants at a time. Plaintiff is optimistic that, as a portfolio of contingent-fee collection cases start requiring court hearings, more will settle, and Plaintiff's income will return to a situation at least as good or better than on January 28, 2015, when (this according to a filing made by Williams | Hughes with the MDCR), "a judge" – and we know which judge – placed a call to Plaintiff's then-employer, and demanded that Plaintiff be fired immediately. Why? Because Plaintiff had the temerity to hire a Grand Rapids attorney to **make a record** for appellate purposes, to challenge an unlawful, manufactured infliction of economic harm on Plaintiff's elderly mother (a judicial widow) by some very greedy lawyers feeding at the trough of a corrupt local probate court. There was nothing the least bit unlawful or wrong with hiring an out-of-Muskegon attorney.

There was nothing the least bit wrong with making a proper record for purposes of appeal, to expose at least one instance of a longstanding corrupt local real estate liquidation mill in action (law enforcement, former law enforcement, and their relatives, appear to be among the "insiders" who profit from this RICO enterprise conducted through the Muskegon County Probate Court). There was nothing the least bit unlawful or wrong with taking an appeal, to point out how that court was systematically disregarding and actively evading published, unambiguous, controlling law, in order to manufacture real estate discounts for corrupt "insiders."

It is worth noting how many of the participants in this scheme (including the judge and the buyers, themselves) at one time or another have cynically described the unlawful real estate liquidation RICO enterprise itself (and the discounts they receive or generate) in starkly religious terms as "God" rewarding the faithful with other people's real estate at as much as a 50% discount.

In any event, there was everything wrong with the judge personally going after Plaintiff's job, in order to try to protect against the unlawful liquidation mill from being exposed on the record.

There was everything wrong with the law firm just following the directions of the Enterprise (via the judge). And everything wrong with the managing partner (who could not identify any reason whatsoever for Plaintiff's abrupt termination on the record), perjuring himself in an effort to protect the judge from accountability for what the judge did. "No longer needed his skill set.," is about as flagrant a **pretext** under the McDonnell-Douglas framework, as it is possible for anyone to devise.

There is everything wrong with operating a probate court as an unlawful enterprise – an asset liquidation mill (and news reports are exposing more and more of these mills across Michigan and throughout the country) that divert the retirement savings of vulnerable elders to corrupt lawyers,

accountants, and other professionals with too-cozy relationships with the local judge.

In any event, most Muskegon attorneys don't have the capacity to relocate (it was a real hardship for the plaintiff to pull this off), and are therefore in fear of their jobs and livelihoods if they buck the longstanding corruption (often the corruption itself is couched in expressly religious terms) that has plagued the Muskegon County Courthouse for <u>decades</u>.

In the end, however, Plaintiff has managed to build what appears to be a sustainable revenue stream in Texas that will now enable Plaintiff to support this litigation (and also, perhaps to get some justice by seeking redress in federal court) over the long haul   And Plaintiff at least has followed what the Court has instructed Plaintiff to do relating to service.

In any event, nearly all the Defendants have been served and are already defending.  Four of them (attorneys who should know better) have known of the lawsuit since July, 2107, and have attempted to engage in gamesmanship instead of fulfilling their civility obligations as licensed professionals.  Within the time frame contemplated by the Court, it should be easily possible (and Plaintiff now, finally – after much financial hardship – can afford ths) to serve all Defendants but Newslo.  And Plaintiff also has a plan for how properly to accomplish service, consistent with Rule 4 on the Defendant (Newslo) located in Israel.

Further, Plaintiff (as declarant) sayeth not.

Respectfully submitted,

Dated: November 24, 2017

    /s/ Eric C. Grimm
Eric C. Grimm (P58990)
ERIC C. GRIMM, PLLC
1017 West South Street
Alvin, TX  77511
Main: (734) 717-4900
Fax: (888) 502-1291
Email:  ecgrimm@umich.edu

Attorney for Plaintiff

## VERIFICATION

Eric C Grimm, Plaintiff, verifies under 28 U.S.C. § 1746 (declarations under penalty of perjury), that, to the best of his personal knowledge and understanding, all the foregoing statements in this Verified Petition are true and correct.  SIGNED this 24th Day of November, 2017.

_____/s/ Eric C. Grimm_____

## PROOF OF SERVICE

The foregoing Verified Petition was submitted through the Court's ECM/CF system, on November 24, 2017, and will be electronically served on all Parties and Counsel that have appeared to defend in this civil action.

_/s/ Eric C. Grimm_____
Eric C. Grimm (P58990)
Email: ecgrimm@umich.edu
Tel: 734.717.4900