ERIC C. GRIMM, PLLC
Bespoke.  Legal.  Services.
Muskegon, MI 49443-0041
734.717.4900

November 30, 2016

Eric C. Grimm
Admitted to Practice:
Texas              1993[*]
District of Columbia  1995
Michigan           1998

*By hand delivery*.

Hon. William C. Marietti
Chief Judge, Muskegon County Probate Court
Michael E. Kobza Hall of Justice
990 Terrace Street
Fourth Floor, Courtroom D
Muskegon, MI  49442

  Re: Courtroom Video Recordings, Case No. 11-87628-CA.
    And Other Matters.

Dear Judge Marietti:

  Thank you for your years of service to Muskegon County, and for volunteering to serve as Chief Judge of the Muskegon County Probate Court.  I can see from news reports that getting the assignments among the different Circuit Court, Family Court, and Probate Court judges just right – like in the story of the Three Bears – must be a daunting challenge.

  I am writing to request some courtroom video, taken by the automated recording equipment installed in two courtrooms in the Muskegon County Courthouse.

  I am also respectfully requesting that a Local Rule or Administrative Order be reviewed, to ascertain whether it promotes the public interest, or some other interest.

  Third, under MCR 8.109(C), I am requesting access to any public investiture ceremony held in the Muskegon County Courthouse in the near future, to ensure that an independent videographer can capture the entire event, so the video can be broadcast for all to see on Youtube.

  Finally, I would appreciate your assistance securing existing video recordings of prior investitures (there may be video of several), so the public can see, and draw their own conclusions about, how Muskegon County conducts investiture ceremonies "before" and "after" this letter.

---

[*] Membership in State Bar of Texas inactive, but in good standing.  Must re-activate license to accept client matters in Texas.

Hon. William C. Marietti
Chief Judge, Muskegon County Probate Court
November 30, 2016
Page 2

    In particular, I am advised you had the presence of mind to activate the recording equipment in Judge Hicks's courtroom, during the investiture of Hon. Randy Kostrzewa, in 2014, but that you only did so late in the ceremony. The entirety of what <u>was</u> recorded, would be appreciated.

    Additionally, a videographer (Kimon Kotos) has advised me that the <u>entire</u> proceeding was recorded – but that **after** I requested a complete copy, the videographer's only copy wound up destroyed. If we really want to dig into how that happened, telephone records of Mr. Kotos and of others who work in the courthouse, likely will be interesting. But I'd rather not go there. Please.

    I think you probably can help make sure that the public interest is well-served, especially now that the election is over, by making certain that the public can see for themselves the entire video, and how their elected public officials, and the guests selected to speak at the event, conducted themselves during business hours, in a public courtroom in a governmental building, that day.

### **October 22, 2014 Video Recording**

    Most important is a very brief recording of events in the courtroom, in Case No. 11-87628-CA, occurring on October 22, 2014.

    That case involves the conservatorship of Martha Grimm, a judicial widow.

    Please be advised that I intend to request <u>all video</u> for that case, from October 8, 2012, through and including the hearing conducted on January 7, 2016. This is germane to an administrative proceeding, commenced in October 2016, the details of which I am presently prohibited by the COURT RULES from disclosing. Withholding the video will cause severe prejudice.

    Thank you in advance for your assistance in this regard.

    Some context may be helpful, and I would urge you to view the video for yourself, and to take whatever action you consider appropriate after viewing it.

    Also, I respectfully remind the Muskegon County Probate Court of the rules governing retention of records of official proceedings. It would be regrettable for the video from October 22, 2014, somehow to become conveniently unavailable.

    In direct violation of MCR 8.116(D)(1), and 8.109(A), on October 22, 2014, almost nothing done by the court in Case No. 11-87628-CA generated any stenographic or mechanical recording of the proceedings. A "hearing" was announced by telephone for that day (the call was made only one day in advance) – without the ordinary Notice of Hearing contemplated by the Court Rules, and without adhering to the customary response schedule in MCR 2.119(C). Had MCR 2.119(C) been followed, the court could have been advised in an orderly way of some rather serious problems –

Hon. William C. Marietti
Chief Judge, Muskegon County Probate Court
November 30, 2016
Page 3

not the least of which was that a proposed Order submitted "*ex parte*" on October 21 by a local attorney, presented pronounced and extraordinary Fourth Amendment concerns.

As stated on the record that day, the Protected Individual wanted to come to court, so her views could be heard. I provided transport for her, to court, so that she could be heard on the matters purportedly requiring such urgent attention that the requirements of MCR 2.119(C) were bypassed.

At no time that day were the Protected Individual's views heard. Indeed, at no time from October 8, 2012 (when Judge Mullally disqualified himself) to April 13, 2016 (when the State Court Administrative office made the reassignment to the Hon. Mark Feyen), was the Muskegon County Probate Court willing to hear from the Protected Individual, herself, even when she stood up in court on her own initiative, and asked on the record to be listened-to.

That's very troubling, to say the least.

The Michigan Court of Appeals recently (September, 2015), issued an important decision, dealing with the personhood and autonomy of protected individuals. It is called In re Bittner Conservatorship, 312 Mich. App. 227, 879 N.W.2d 269 (2015). The statutory rules emphasized by the Bittner decision, however, existed long before September, 2015.

And the Muskegon County Probate Court (including **all** its judges) ought to respect, and maximize, the personhood and autonomy of all protected individuals, not just Martha Grimm.

The importance of the Bittner decision, I think, is illustrated by the frequency that the new September 29, 2016 revised edition of AN INTRODUCTION TO GUARDIANSHIP AND CONSERVATORSHIP PROCEEDINGS by the MICHIGAN JUDICIAL INSTITUTE, cites and liberally quotes from Bittner. The video of what occurred on October 22, 2014, and in other hearings, should be viewed in light of the Bittner decision, and whether the Probate Court actually respected Martha Grimm's rights of autonomy and personhood – or systematically deprived her of those rights.

Our experience with the Probate Court, to put it mildly, from October 8, 2012, to April 13, 2016, was inexcusably awful, deeply offensive on many levels, and entirely inconsistent with the statutory requirement of respecting Martha Grimm's personhood and maximizing independence.

It should also be noted that Martha Grimm **no longer has any guardian**. She wrote the court **three times**, asking for her rights of personal dignity and autonomy to be respected, and for changes in the way her guardianship was being administered by the Probate Court. The first such letter was returned, in violation of the ESTATES AND PROTECTED INDIVIDUALS CODE. See MCL 700.5306a(1)(v), (w), 700.5310 (hearing within 28 days is mandatory). The second was ignored.

The third one was submitted to the Probate court **after** the SCAO reassignment, at which

Hon. William C. Marietti
Chief Judge, Muskegon County Probate Court
November 30, 2016
Page 4

time, finally, the Hon. Mark Feyen (for the first time) <u>did</u> listen to the Protected Individual and finally took her views (as well as intervening developments in her medical condition, that the Probate Court had every opportunity to learn about prior to reassignment) into account.

Martha Grimm's improvement – from August 29, 2011, to at least December, 2014 – was such that, following an evidentiary hearing, Judge Feyen found that Martha Grimm is **no longer incapacitated** (at least for guardianship purposes), and dissolved her guardianship altogether.

The violation of MCR 8.116(D)(1) on October 22, 2014, was hardly the first or the only time that the Muskegon County Probate Court has conducted business (involving the **merits**, and actually has pre-decided issues about the **merits**) off the record, so as to avoid making any stenographic or mechanical recording of the proceedings. Indeed, it has come to my attention that this is a continuing, persistent, problem not confined to one case. Multiple attorneys (whose anonymity I will protect, so that the inevitable retaliation will be directed toward me, and not toward them) have come to me, to express concerns about being yelled at and browbeaten into not making a record.

I can confirm, based on personal and first hand experience, what it is like to have three <u>very aggressive</u> attorneys, <u>and the judge</u> "gang up" off the record, in an effort to secure a particular result. It is not pleasant. Not professional. And something ought to be done about this practice.

In any event, the place to start is the video recording of what little **did** happen in the courtroom on October 22, 2014. I will follow up about other matters, once that video is released.

We should also address what was ordered that day (without anything done on-record to ascertain whether the illegal order was a good idea or not), and the Fourth Amendment.

But that also is a subject that can wait for another time.

**Local Administrative Order**

It is not clear whether I direct the above request for the October 22, 2014, video to you, or to the Hon. Mark Feyen, who is sitting by SCAO designation in Case No. 11-87628-CA.

Either way, the Probate Register has advised me of a local Administrative Order, that interposes judges as gatekeepers of video courtroom recordings in Muskegon County.

This is a real head-scratcher, and far from self-explanatory.

Obviously, the public has a right of access to all court proceedings, <u>see</u> MCR 8.116(D)(1), subject only to very limited, narrowly-tailored, exceptions, specified in the rule.

Hon. William C. Marietti
Chief Judge, Muskegon County Probate Court
November 30, 2016
Page 5
_____

And that ought to include access to the official records of court proceedings, unless narrowly-tailored legal requirements for limiting access, are satisfied.

Please be advised that I am formally requesting that a careful review and inquiry be conducted into why such a rule would exist, and whether it is in the public interest for video to be suppressed **only** when the requisite findings in Rule 8.116 are made, or whether judges by local rule arbitrarily should preclude all access to video, unless a specific request is pre-authorized.

Please also advise whether you think it is worthwhile to involve the State Court Administrative Office, in this matter, so as to promote "best practices" in the public interest, both in Circuit Court, and in Probate Court. I am presently considering escalating it, unilaterally.

The First Amendment, as you know, protects not only the right of speakers and publishers to communicate information, but also the right of the public to receive information. Imposition of a prior restraint on public access to video of courtroom proceedings, conducted in public courtrooms, unless arbitrarily pre-authorized or declined by the judge who appears in the video, is a very interesting legal question. Let's hope we do not have to resolve it in federal court.

This Local Administrative Order does not appear to have been implemented with the public interest in mind. Perhaps you or someone from the court could explain how it originated, and what the objective of the Administrative Order was, when it was adopted.

**Investiture Video (Two of Them)**

The second video that I am requesting (two of them, really) does not actually involve **judicial** (or adjudicative) business at all – but instead involves a purely ceremonial (albeit, governmental) event. Indeed, the event was open to the public and Judge Hicks's courtroom was packed.

There is, obviously, no valid reason to prevent the public from seeing both video recordings of Hon. Randy Kostrzewa's investiture ceremony. As you are probably aware, **none** of the judges in the room that day – even after rather serious First Amendment concerns were raised in writing – has walked back what occurred. Whether or not the judges in the room that day were hearing contested cases, it is fair to say that the badges of governmental authority were on display.

The government has an obligation to maintain "neutrality between religion and religion, **and between religion and nonreligion**.'" McCreary County v. ACLU of Ky, 545 U.S. 844, 860, 125 S. Ct. 2722 (2005) (emphasis added) (quoting Epperson v. Arkansas, 393 U.S. 97, 104 (1968); Everson v. Board of Ed. of Ewing, 330 U.S. 1, 15-16 (1947); Wallace v. Jaffree, , 472 U.S. 38, 53 (1985)). This posture of **neutrality** is consistent with multiple sections of the Code of Judicial Conduct, requiring judges to treat people equally, and not to discriminate on the basis of "protected

Hon. William C. Marietti
Chief Judge, Muskegon County Probate Court
November 30, 2016
Page 6

characteristics," such as but not limited to, religious views, atheism, and unbelief.

Again, the general public (globally) ought to be able to see the "before" and "after" videos – and whether the Muskegon County Courthouse is able, pro-actively, to learn from experience to do things a better way, after pronounced First Amendment violations are pointed out.

And, anticipating that the problems evident in October 2014, will not be repeated in 2016 or 2017, a public apology really should be made (and should have been made quite some time ago) by all those responsible both for the 2014 event, as well as everyone responsible for not promptly walking back the excesses. But, if the only apology is a change in behavior, then I suppose I shall have to accept that as the best apology that those wearing robes at the 2014 investiture can bring themselves (as a matter of personal **and** professional courtesy) to make.

While we are on the subject of apologies, it has also come to my attention that a judge of the Probate Court has used a variant of the term "bigot" on official stationary, in reference to a local attorney. That is rather strong language, and perhaps should be reconsidered. And a formal apology made in writing. To help put things in context, I invite you to consider a recent piece published by THE GUARDIAN, relating to the Presidential election.

As you might be aware, a British politician sought to **praise** Donald Trump (the surprise winner of the Presidential election, but the words of praise were spoken prior to election day), by describing Mr. Trump as a "Silverback" – dominant, masculine – personality in televised debates.

A recent essay by Ros Coward published by THE GUARDIAN on October 14, 2016, helpfully distinguishes between "19th Century" metaphors involving gorillas, and the more up-to-date 21st Century (**race-neutral**) significance of the distinctly different term "Silverback."

In context, the remark mistakenly criticized as "bigoted" had **absolutely nothing whatsoever to do** with anybody's race (indeed, evolutionary biology long has been a passion of mine, and "race" is not even a concept with any biological or scientific significance or basis), and had **everything** to do (as the email itself stated) with a continuing, long-standing (since 2002, at the least – a period of 14 years), pronounced, **bullying** problem in the Muskegon County Courthouse.

Is there a religious "bigotry" problem in the courthouse, and in Muskegon, generally? I'm not going to use such strong language, at this time. But do we have at least one judge with a reputation for quoting bible verses (often to people who do not share his religious sensibilities) from the Bench, more often than the judge cites statutory sections or the Court Rules? What has been done to promote inclusion of, and equal respect for, diverse religious viewpoints (including, but not limited to, atheism and unbelief) in our County government – especially in all our courtrooms?

What does the most recent investiture ceremony communicate about – I'm not going to use

Hon. William C. Marietti
Chief Judge, Muskegon County Probate Court
November 30, 2016
Page 7
_____

the B-word – but a certain glaring lack of sensitivity and inclusiveness toward the **seventy percent** of Muskegon County residents who do not belong to religious congregations, and many of whom do not have any particular religious preference?  I rest my case on that score.

     I apologized already in the media, and in other ways, for my inadvertent lack of understanding how 19th Century sensibilities can be still mis-perceived by some, when one uses language in a race-neutral, 21st Century manner.  I did so promptly, and sincerely.

     Why the absence of any reciprocal apology by those in the courthouse who intentionally (and on multiple occasions) have given offense on religious grounds – who know and have known exactly what they were doing, and intended to do it?  Even an unbeliever can quote scripture.  Before using thermonuclear language like "bigot," is it not a good idea to remember Luke 6:41: "And why do you look at the mote in your brother's eye, but ignore the great plank in your own eye?"

     As Chief Judge, and in your administrative capacity, perhaps you can offer some wise and judicious counsel to your fellow judges, and re-emphasize the importance of religious diversity, inclusion of all perspectives on an equal (nondiscriminatory) basis, maintaining professional standards of civility and decorum – and most importantly, zero tolerance for judicial bullies.

     Thank you for your attention to these matters.

                                     Very truly yours,

                                     Eric C. Grimm