# Fwd: Video of investiture ceremony in Circuit Court.

December 05, 2017 at 8:29 PM

From **Eric C. Grimm**

To **Eric C. Grimm**

 [manners_social_customs.pdf 1.63 MB](manners_social_customs.pdf)

Sent from my iPad

Begin forwarded message:

> **From:** Eric Grimm <ecgrimm@me.com>
> **Date:** January 10, 2016 at 22:46:11 CST
> **To:** kimonkotos@gmail.com
> **Cc:** kostrzewara@co.muskegon.mi.us
> **Subject: Video of investiture ceremony in Circuit Court.**
>
> Kimon --
>
> I am copying Randy on this email as a heads-up, to let him know that I will stop by his office (hopefully Monday) in an effort to secure a copy of the video we discussed on the phone this evening.  The link to the video I mentioned is below.
>
> Thanks for letting me know that Randy has the raw video footage, a copy of of which I requested back in November.  As I've never suggested otherwise, you're just the videographer -- and I wouldn't expect you to have a personal view one way or the other about the subject matter of any of your videos.  And we are both good friends of Randy.  I intend for that to remain the case.  We're all grown-ups and can discuss this subject without hard feelings.
>
> I may need to talk to you about copyright permissions, unless you have a"work made for hire" agreement with Randy.  Portions can be excerpted under the "fair use" doctrine, especially if they are important to the general public (and, in this case, some excerpts clearly are).  Putting the whole thing up, unedited, to put any "fair use" clips in their whole context, is probably the fairest thing for all involved, but I don't think anyone can do *that* (as opposed to fair use) without the copyright holder's permission.
>
> If the Michigan Department of Civil Rights has not sought this footage, I expect it will in the relatively near future.  And it is directly relevant to an MDCR investigation.  It would be regrettable if footage or parts of it (remember the 16 minutes episode in the 1970s -- we don't want a repeat of *that*) were to be spoliated before it became evidence in an administrative proceeding (and perhaps in court).  And, because the events took place in a public building, with public officials presiding, it only stands to reason that the public should have every right to know what goes on within *their* public governmental buildings, and to make up what undoubtedly will be a wide spectrum of personal opinions -- for themselves.
>
> I should hasten to clarify -- as I did on the phone -- that I have no issue with Randy, personally, and I don't expect or intend any adverse consequences for him at all.  Indeed, to the extent this acquires some degree of public notoriety, it is probably better for it to happen in 2016 rather than 2020.  Because memories tend to be short.

In particular, I personally agree with many of the plaudits that various speakers offered about Randy's character at the ceremony.  I personally recommended Randy to Governor Snyder for appointment to the bench, and my opinion has not changed.  He is well-qualified to be a judge.  I know that there is a lot more to *Randy's* perspective on embracing, including, and respecting a variety of religious perspectives, than this particular video alone would suggest.  And I think it is only fair to Randy for me to acknowledge that there is so much more to the story than this video alone depicts, when it comes to Randy's actions and qualifications.  Indeed, I have some doubts about whether much of what went on that day really ever was his idea in the first place.  I guess I may never know everything I'd like about that subject.

One of my mentors, many years ago, was Steve Fennell -- who is a world-class trial lawyer.  Early on, Steve gave me some good advice.  Never ask just "is it legal to do this" but always follow the Washington Post Rule, with anything you do as a professional.  If what you are doing today were to be portrayed in the worst possible light tomorrow on the front page of the Washington Post -- would you be okay with that?  If so, then proceed.  That, it seems to me, has been a rule of thumb that has served me (and others) well over the years.

I don't know how Randy feels about the investiture ceremony.  If the concerning First Amendment stuff had been done at Fricanos, in a way that communicated to everyone unmistakably that "this is clearly private and not governmental expression," or an unofficial companion ceremony had been held in a church, that would be one thing.  The exact same words spoken in a governmental building -- in a courtroom, no less -- convey a materially different message to onlookers (and I was one of the people there to wish my friend Randy well).  I was hardly alone in seeing this as empatically and pointedly governmental and coercive, on purpose -- not private in the least.

Consider this clip, which happened in a governmental building in Alabama:

https://www.youtube.com/watch?v=KqIuHYyIfJw

If this prayer happened in a church, or a rented room in a convention center, without apparent official governmental imprimatur, there's no problem with it at all.

But if people with contested cases (or their lawyers) are sitting ready to have their cases heard on the merits in a governmental hearing chamber, before the very administrative officials who will be deciding their cases, and are asked to raise their hands about "belief in prayer" . . . who wants to be the person in the room conspicuously not raising your hand?  Think your client will lose if you voice dissent?

It was Hon. Sandra Day O'Connor (a Ronald Reagan appointee -- and Hon. Hoogsta's favorite justice) who hit the nail squarely on the head, when she wrote in Lynch v. Donnelly:

The Establishment Clause prohibits government from making adherence to a religion relevant in any way to a person's standing in the political community.  Government can run afoul of that prohibition in two principal ways.  One is excessive entanglement with religious institutions ...The second and more direct infringement is government endorsement or disapproval of religion.  Endorsement sends a message to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community.

An investiture is the assumption by an official of governmental office.  What could possibly make it a *private* affair, if it is held in a public building, in a courtroom, with governmental officials presiding?

Case 1:17-cv-00654-GJQ-PJG   ECF No. 44-7,  PageID.676   Filed 12/06/17   Page 3 of 3

Ask yourself Kimon . . . if that ceremony communicated a message to everyone in that room that Christians and everyone else all are equal in the Muskegon County Courthouse, and nobody is an outsider; nobody is an insider -- the "political community" has no obvious favorites.  I suspect most of the people in the room did not perceive that as the intended takeaway governmental message.

This stuff does matter to real peoples' lives -- in Muskegon County.

For instance, when it comes to sobriety programs, which often are court-ordered, a whole variety of approaches have been compared for relative efficacy.  AA -- with an emphasis on "powerlessness" and submission to a "higher power" -- tends to do relatively poorly compared with more contemporary approaches, when evaluated for efficacy.  AA may be just the thing for some individuals.  But not for everyone.  Ask around and determine for yourself whether Muskegon County takes an evidence-based approach to maximize efficacy for each person directed to get help with sobriety.

Or what alternatives are offered if a family directed by court to go to counseling, discover that -- as a pre-condition -- they must sign a religious covenant.  Does the religious component really make the counseling better and more effective for everyone?  Ask questions if you like, and determine for yourself what the experience is of people subject to court jurisdiction in Muskegon County.

As a final courtesy, I'm attaching a written product that I prepared some months ago, with the local Rotary Club principally in mind.  I was pleasantly surprised to learn, last Thursday (right before a court hearing that also was interesting) that the Rotary Club has made a policy change, and now will entertain a "moment for reflection" each meeting -- which may or may not be religious in any given meeting -- rather than consistently having an invocation.

When it comes to non-discrimination and equality, things really can and do get better when people respectfully speak up, and suggest new approaches.  There is no need to get defensive and upset, when the purpose is to have a respectful and public conversation about how to include everyone as equals, and to minimize past discriminatory governmental practices.

ECG